86 N.J. Super. 117 (1965)
206 A.2d 176
EDWARD D. BERNSTEIN, PLAINTIFF,
v.
PALMER CHEVROLET & OLDSMOBILE, INC., A CORPORATION OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
REX SALES CO., INC., A CORPORATION OF NEW JERSEY, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1964.
Decided January 6, 1965.
*118 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Nathan C. Staller argued the cause for appellant.
Mr. Marvin Z. Wallen argued the cause for respondent (Messrs. DeBrier & Wallen, attorneys).
*119 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Palmer Chevrolet & Oldsmobile, Inc. (Palmer) appeals from a Law Division summary judgment dismissing its third-party complaint against Rex Sales Co., Inc. (Rex).
On March 23, 1960 Palmer leased its premises at 600 Asbury Avenue, Ocean City, to Rex for a period of three years, with option of renewal. The lease provided, among other things, that
"It is further mutually understood and agreed that the party of the second part [Rex] shall be responsible for carrying public liability insurance in the amount of $200,000. and $400,000., effectively endorsed to protect the party of the first part against risk of damages or injuries upon the premises in question. Said policy shall be submitted for the approval of the party of the first part."
On February 26, 1960 the New Amsterdam Casualty Co. issued its comprehensive general liability policy LGC 313130 to Rex for the premises at 600 Asbury Avenue, the bodily injury liability limits being $200,000 for each person and $400,000 for each accident, with property damage liability limits set at $25,000 for each accident and $50,000 for aggregated operations. By rider attached and dated the same day, the policy was endorsed so as to make Palmer, the lessor, an additional assured.
On February 3, 1961 there was an explosion and fire on the leased premises, allegedly caused by defective electrical wiring in the walls. As a result, Edward D. Bernstein, president of Rex, suffered injuries for which he received workmen's compensation benefits under a policy issued by New Amsterdam to that company.
Bernstein thereafter brought an action against Palmer to recover damages for his injuries, allegedly caused by Palmer's failure to repair the electrical wiring in the Rex Building. Palmer was given leave to file a third-party complaint against Rex demanding judgment for all sums found due to plaintiff and paid by Palmer under such judgment as he might recover. *120 The basis of the third-party action is set out in paragraph 3 of the complaint:
"At the time specified in the [Bernstein] complaint, Rex Sales Co., Inc. was a tenant of Palmer Chevrolet & Oldsmobile, Inc., under a written lease whereby Rex Sales Co., Inc. agreed to save harmless and indemnify Palmer Chevrolet & Oldsmobile, Inc., for any losses sustained in the operation of the demised premises."
Rex filed an answer which denied that allegation and, among other defenses, alleged that Palmer was barred from recovery because Rex was under no liability to it, contractual or otherwise.
Rex served interrogatories upon Palmer which included the following question:
"10. State all facts, agreements or leases whereby third party plaintiff contends that Rex Sales Co., Inc., agreed to save harmless and indemnify Palmer Chevrolet & Oldsmobile, Inc., for any losses sustained in the operation of the demised premises as alleged in the third paragraph of the third party complaint."
Palmer's answer was:
"The basis for this contention is founded on the attached lease and the terms thereof speak for themselves."
Rex immediately moved for summary judgment dismissing the third-party complaint. When it was denied Rex renewed the motion, this time relying upon the pleadings, answers to interrogatories, depositions taken and the affidavits annexed. The latter dealt solely with whether the policy had been delivered to and received by Palmer. In granting summary judgment dismissing the third-party complaint the trial judge stated that he was not at liberty to expand the terms of the lease. Under it Rex was required to carry "public liability insurance," endorsed to protect Palmer against the risk of damages or injuries upon the leased premises  nothing more. Had Palmer desired that Rex take out indemnity insurance, this could have been clearly stated as a condition of the lease.
*121 On this appeal Palmer contends that summary judgment should not have been granted since there existed a genuine issue of material fact, namely, the intention of the parties when they agreed in the lease that Rex was to carry public liability insurance endorsed to protect Palmer, citing the summary judgment rule, R.R. 4:58-3, and Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954). Since Palmer contends that the parties contemplated an indemnification agreement, and Rex denies this, it is argued that it ultimately would be for the trier of the facts to determine the intent of the parties.
In support of its argument, Palmer states that our courts have, almost without exception, abandoned the conceptual approach of construing indemnification clauses based on language alone. Instead, they now determine what the parties actually bargained for and look to surrounding circumstances to ascertain their intent. Stern v. Larocca, 49 N.J. Super. 496 (App. Div. 1958); Cozzi v. Owens-Corning Fiberglas Corp., 63 N.J. Super. 117 (App. Div. 1960), and Buscaglia v. Owens-Corning Fiberglas Corp., 68 N.J. Super. 508 (App. Div. 1961), affirmed 36 N.J. 532 (1962), are cited in support. However, all three cases involve express indemnity contracts, and in each instance the issue of interpretation was the extent of the indemnification afforded thereby, and not, as here, whether indemnification was in fact bargained for or afforded under the lease. Since the clauses involved in those three cases were ambiguous or otherwise doubtful, the courts properly inquired into the intention of the parties. We find Stern, Cozzi and Buscaglia inapplicable in the instant case, which involves a clear and unambiguous lease provision relating to insurance, rather than an indemnity provision ambiguous as to scope.
The matter before us can be resolved simply and directly by considering exactly what it was Palmer contended for in its pleadings. In its third-party complaint it alleged that Rex was its tenant under a written lease whereby Rex "agreed to save harmless and indemnify" Palmer for any losses sustained *122 in the operation of the demised premises. This was denied by the answer, and when Rex, in its interrogatories, called upon Palmer to state "all facts, agreements or leases" whereby Palmer contended that Rex had "agreed to save harmless and indemnify" it for any losses sustained in the operation of the leased premises, as alleged in the third-party complaint, Palmer stated that the basis of its contention was the lease, whose terms "speak for themselves."
Nowhere in the complaint or in the answers to interrogatories, or in the affidavits filed in opposition to the Rex motion for summary judgment, did Palmer allege or in any way indicate that the language of the lease did not reflect the true intention of the parties. The question of intention is belatedly raised. Had Palmer intended to make intention an issue, it should have done so in clear and unmistakable fashion in its complaint, or at least in its affidavits. It may still do so in an independent action against Rex, to be resolved after the main suit brought by Bernstein against Palmer has been concluded.
The language of the lease is unmistakable in its meaning: Palmer bargained for a $200,000-$400,000 public liability insurance policy, endorsed to protect it against the risk of damages or injuries upon the leased premises. There is an obvious difference between a liability policy and an indemnity policy. Under the former a cause of action accrues when liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by the insured's payment of the judgment. In short, under an indemnity policy the insured must have suffered an actual money loss before the insurer is liable. 7 Appleman, Insurance Law and Practice, § 4261, p. 35 (1962); North v. Joseph W. North & Son, Inc., 93 N.J.L. 438, 440-1 (E. & A. 1919); Chodosh Bros. v. American Mutual Liability Ins. Co., 119 N.J.L. 335, 336 (E. & A. 1938).
At oral argument we requested that counsel for Rex supply us with a copy of the New Amsterdam Casualty Co. policy of February 26, 1960. As noted, it is a comprehensive general *123 liability policy, so captioned, in regular form. It contains the usual notice condition: "If claim is made or suit is brought against the insured, the assured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." This condition undoubtedly inspired Palmer's claim that an indemnity policy was contemplated, and its allegation in the third-party complaint that Rex had agreed in the lease "to save harmless and indemnify" it for any losses it might sustain in the operation of the leased premises. Other pleadings in the Law Division action support our conclusion.
On July 22, 1963, soon after Rex filed its second motion for summary judgment, Palmer obtained leave to file a third-party complaint against New Amsterdam Casualty Co. That complaint alleged that Bernstein had filed suit against Palmer; that New Amsterdam, a corporation empowered "to contract to indemnify against loss from liability arising out of casualty loss," had on February 26, 1960 issued to Rex "its policy or contract of indemnity No. 313130," endorsed to include Palmer's interests; and that notwithstanding the contractual obligations New Amsterdam owed Palmer, it had failed to comply therewith and failed to appear and defend Palmer's interests. Judgment was demanded in the sum found due plaintiff Bernstein from Palmer. New Amsterdam's answer denied these allegations and set up, among other defenses, Palmer's failure to send it "any suit papers and to otherwise comply with the terms of comprehensive general liability insurance policy No. 313130." Further, that Palmer had failed to give the company proper notice of Bernstein's alleged accident, and otherwise failed to comply with the terms of the policy. It will thus be seen that Palmer must meet New Amsterdam's defense of failure of notice.
It should be noted, incidentally, that New Amsterdam moved for summary judgment dismissing the third-party complaint against it. Two grounds were urged: (1) New Amsterdam should not be made a party during the pendency of the primary action and prior to any judgment against or *124 written agreement by Palmer, and (2) Palmer's failure to forward every demand, notice, summons or other process received by it. The County Court judge concluded that appropriate relief on the first ground lay in a severance of the actions, the third-party action against New Amsterdam to await adjudication of the primary action by Bernstein against Palmer. As for the second ground, the court observed that Palmer admittedly had not forwarded the summons and complaint to New Amsterdam upon their receipt, but since he found enough doubt in the case as to whether New Amsterdam had notice of the suit, he denied summary judgment.
Palmer further urges that assuming the trial court was correct on the question of intent, other facts remain in dispute. First, there is the question of whether Rex fulfilled the agreement by providing the insurance coverage called for. We see no merit in this contention; the New Amsterdam policy completely satisfies the insurance requirement of the lease. Palmer also claims there is no showing of its approval of the policy, as called for by the lease. In our opinion, this claim, too, does not further Palmer's cause. Under the entirely clear and definite lease provision relating to insurance, it could not reasonably have withheld approval of the New Amsterdam policy described above.
Palmer now has third-party actions pending, not only against New Amsterdam, but also against two contractors because they allegedly performed certain electrical repairs about the premises in a negligent, substandard and unworkmanlike manner, resulting in an explosion and fire on February 3, 1961. The third-party action against New Amsterdam has, as indicated, been severed, awaiting the result in Bernstein's main action. Palmer may, if it chooses, institute an independent action against Rex, based on its claim that what the parties intended under the lease was an indemnity policy and not "public liability insurance." In effect, Palmer would be asking for reformation of the lease and damages for breach of contract.
Affirmed.