132 N.J. Super. 234 (1975)
333 A.2d 293
ANDREW J. CORCORAN AND RUTH M. CORCORAN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
THE HARTFORD FIRE INSURANCE CO., A CONNECTICUT CORPORATION LICENSED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1975.
Decided February 13, 1975.
*237 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Mr. Jeffrey Kull McKinley argued the cause for appellant (Messrs. Stevens & Mathias, attorneys; Mr. George R. Zucca on the brief).
Mr. David J. Sheehan argued the cause for respondents (Messrs. Crummy, DelDeo, Dolan & Purcell, attorneys; Mr. John A. Ridley on the brief).
The opinion of the court was delivered by LEONARD, P.J.A.D.
Defendant insurance company appeals from a judgment of $2000 damages, plus $500 counsel fee and $31.40 costs, entered against it in the county district court. Plaintiffs instituted suit on a homeowner's insurance policy to recover for the loss of a diamond ring.
Plaintiffs' policy with defendant was in effect for the period from November 4, 1969 to November 4, 1972. In addition to the basic homeowner's policy, plaintiffs also purchased from defendant, for an additional premium, an endorsement entitled "Extended Theft Coverage."
The following provisions of plaintiff's policy are pertinent to this appeal. On the face sheet the policy provided that under Section 1, Coverage C, "Unscheduled Personal Property," defendant's liability was limited to $20,000.
"Coverage C  Unscheduled Personal Property" was defined as follows:
1. On premises: This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by the Insured, while on the premises * * *.
Under "Perils Insured Against" there appeared the following definition:
*238 11. Theft, meaning any act of stealing or attempt thereat * * *.
Upon knowledge of loss under this peril or of an occurrence which may give rise to a claim for such loss, the Insured shall give notice as soon as practicable to this Company or any of its authorized agents and also to the police.
The endorsement which plaintiff purchased modified this language, by providing:
Inclusion of Mysterious Disappearance: As respects only property covered under Coverage C, § 1, so much of the description of the peril of theft under the caption "Perils Insured Against" in the form attached to this policy, as reads:
"Theft, meaning any act of stealing or attempt thereat"
is amended to read:
"Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance (except mysterious disappearance of a precious stone or semi-precious stone from its setting in any watch or piece of jewelry)."
Finally, under "Special Limits of Liability" the basic policy provided:
3. Under Coverage C, this Company shall not be liable in any one loss with respect to the following named property:
* * * * * * * *
(d) by theft for more than $1000 on any single article of jewelry including * * * precious and semi-precious stones.
Plaintiffs instituted suit when defendant refused to pay for the loss of plaintiff Ruth Corcoran's (plaintiff) engagement ring which occurred on or about the second Saturday in December 1971.
At jury trial plaintiff was the only witness. She testified to the circumstances surrounding the disappearance of the ring. The family had brought all the storage boxes down from the attic in order to trim the Christmas tree. She was babysitting for her grandchildren that day and there was a tremendous amount of excitement in the house. The family all trimmed the tree together and all the ornament boxes were kept in the kitchen, except for a few of the very old ones which were thrown out. When she became aware that her *239 ring was missing, she searched "everywhere," including the waste baskets and garbage with no success. She still had hope that she might discover the ring among the Christmas tree ornaments, so when the tree was taken down she searched every ornament and all the wrappings and boxes.
Plaintiff further testified that she was in the habit of taking her ring off and placing it on a ledge above the kitchen sink whenever she did housework. The sink had a common strainer that fit in the drain and plaintiff testified that she never left her ring above the sink when the strainer was in the open position.
On this day plaintiff recalled that there had been quite a few deliveries made to her home. The delivery men always used the back door because of the particular layout of her house. The back door opened into the kitchen. Plaintiff could not recall where the ring had last been before it disappeared and was not sure whether it had been stolen.
Over defendant's objection plaintiff was permitted to testify as to the value of her ring. She stated that some time after she had filled out a proof of loss she had visited two jewelers to price comparable rings. She received estimates of $4000-$5000. She testified that at the time she filled out this form the amount claimed therein ($2000) represented her best estimate of the ring's value, but that she now realized that she had substantially under-appraised its value. She explained that "years ago she always knew that a carat was worth $1000 and I think I had assumed it was worth $2000 until I had started to check some prices now." The ring had never been appraised as it had belonged to plaintiff's mother-in-law and had been given to plaintiff 30 years before when she had become engaged to her husband. The only person who had thoroughly examined the ring and who would have been able to give an appraisal of its actual value was the jeweler who had placed the stone in its present setting. This jeweler, however, was deceased. Plaintiff testified that she knew her ring intimately, but that she knew "just a little about diamonds as most women do." On cross-examination *240 she admitted that she was not positive the ring was "exactly" two carats but asserted that "most women do know what a one-carat diamond looks like or a two-carat * * * * roughly we would know."
Defendant moved to have its potential liability limited to $1000 because of § 3(d) of the policy under "Special Limits of Liability" (quoted supra). The court denied this motion on two grounds: (1) "because there is ambiguity here as to whether it's [the special limitation] applicable or not to the mysterious disappearance clause which is incorporated in the endorsement," and (2) because "on the face of the policy it would seem to the layman that the limits of liability for unscheduled property would be $20,000."
Defendant's motion to dismiss plaintiff's case because she had not notified the police as allegedly required under the policy, and its request to charge that an element of probability of theft must be shown in order for plaintiff to recover, were both denied.
As noted, defendant rested without offering any witnesses. Plaintiff then moved for a "summary judgment" as to liability. This motion was granted and the matter was submitted to the jury solely on the issue of damages. The jury returned a verdict in plaintiff's favor in the sum of $2000. Her counsel then moved, pursuant to R. 4:42-9(a) (6) for the assessment of counsel fees against defendant. Following the filing of affidavits by both sides, the court granted the fees and costs as hereinbefore noted.
On this appeal defendant's primary contention is that plaintiff was required to show the probability of theft in order to recover under the "mysterious disappearance" clause of the policy and the trial court erred in ruling to the contrary.
This issue is one of first impression in this State and there exists a conflict of authority among the other jurisdictions which have considered it. See Annotation, "Provisions of burglary or theft policy as to effect of disappearance of property," 12 A.L.R.3d 865, 876-879 (1967). Among those holding *241 that the proofs must establish proof of circumstances which suggest the probability of theft are: Brier v. Mutual Ins. Co. of Hartford, 3 Conn. Cir. 326, 213 A.2d 736, 737-738 (Conn. Cir. Ct. 1965); Austin v. American Cas. Co., 193 A.2d 741 (D.C. Ct. App. 1963). The opposite view is espoused in Aetna Ins. Co. v. Zoblotsky, 481 P.2d 761 (Okl. Sup. Ct. 1971); Sprau v. State Farm Fire & Cas. Co., 308 F. Supp. 549 (D. Mont. 1970); Hammontree v. Central Mut. Ins. Co., 385 S.W.2d 661 (Mo. App. 1965); Michigan Millers Ins. Co. v. Geller, 168 So.2d 204 (Fla. App. 1964); Conlin v. Dakota Fire Ins. Co., 126 N.W.2d 421 (N.D. Sup. Ct. 1964); Midlo v. Indiana Lumbermen's Mut. Ins. Co., 160 So.2d 314 (La. App. 1964); Englehart v. Assurance Co. of America, 139 So.2d 108 (La. App. 1962).
It is to be first noted that the policy terms involved in the cases relied upon by the courts in the first group of cited cases were different from the instant one. They provided that "mysterious disappearance of any insured property * * * shall be presumed to be due to theft," whereas the policies involved in the latter group were identical with the present policy.
In Midlo, supra, the court relying on Englehart, supra, defined "mysterious disappearance" as being "any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity or speculation, or circumstances which are difficult to understand or explain," and went on to hold that the possibility or probability of theft need not be shown but that "mere proof of mysterious disappearance [as thus defined] will establish plaintiff's right to recovery."
The court in Conlin agreed but bolstered its conclusion with two additional arguments. First, the court pointed out that "If the amendment to include `mysterious disappearance' were intended to apply only to disappearances where theft was shown to be possible or probable, the exception of mysterious disappearance of a precious or semi-precious stone from its setting would be unnecessary." Id. 126 N.W.2d at 424. Secondly, *242 the court noted that the ambiguity in the policy, if any existed, must be construed in favor of the insured. At 425.
In Hammontree, supra, the court reached the same result, but the rationale for its decision was somewhat different. The court expressed the opinion that the words "or mysterious disappearance" in the endorsement were "not to be included in and as a part of the phrase `meaning any act of stealing or attempt thereat' which is definitive of `theft' but rather denote and identify `mysterious disappearance' as a separate and coordinate risk." 385 S.W.2d at 665 (emphasis supplied). This rationale was accepted and followed in Aetna, supra, 481 P.2d at 764. See also Seward v. Assurance Co. of America, 218 Cal. App.2d Supp. 895, 32 Cal. Rptr. 821 (App. Dept. 1963); Midlo and Englehart, supra.
Finally, in Sprau, supra, in accepting the above line of cases, the court specifically rejected the theory advanced by defendant herein as enunciated by Austin, supra. The court stated:
If some coverage was added and it surely was, I find it very difficult to find what was added unless the language is interpreted to include losses not connected with a probable or possible theft. If the intention of option 5 [the "mysterious disappearance" clause] was to enable the policyholder to prove theft by something less than the quantum of evidence which a court ordinarily would recognize as circumstantially proving it the language used in the option gives very little clue to that intention. It is almost inconceivable that language would be chosen to create some contractual requirement of proof without saying what that requirement is.
After a consideration of all of the above cases, we conclude that the better-reasoned rule is that in order for a plaintiff to recover under a "mysterious disappearance" clause as is contained in the instant howeowner's policy, it is not necessary to first prove the probability of theft. Mere proof of mysterious disappearance, as defined in Midlo, supra, will establish plaintiff's right to recovery.
*243 Our conclusion is fortified by the general rule of construction followed in this State that if the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied; as well as the subsidiary rule that if the clause in question is one of exclusion or exception, designated to limit the protection, a strict interpretation is in order. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970). Support is also found in the principle that policies should be construed liberally in favor of the members of the public who purchase them, to the end that coverage is afforded "to the full extent that any fair interpretation will allow." Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961). Accordingly, we find defendant's first contention to be without merit.
Next, defendant asserts that assuming the law of this State to be in accordance with the above conclusion, nevertheless the trial judge erred in not submitting the issue of liability to the jury for resolution. Plaintiff's motion, incorrectly designated as a motion for "summary judgment," was actually a motion for judgment made pursuant to R. 4:40-1. In determining this motion the judge had to accept as true all evidence which supported defendant's position and had to accord defendant the benefit of all legitimate inferences which could have been deduced therefrom, and if reasonable minds could have differed, the motion should have been denied. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).
Although we recognize that there does not exist in this State a hard and fast rule that the credibility of a witness is always a question for jury determination, Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 500 (1956), yet the mere fact that testimony is uncontroverted does not establish that such evidence is conclusive. Id. at 490-491. Where men of reason or fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such character is for the jury. Id. at 494. This is particularly so where the testimony, *244 although uncontradicted, is affected by conflicting inferences to be drawn from it. Id. at 498.
Here, although plaintiff's testimony was not contradicted, it was susceptible to conflicting inferences. She testified that: The ring may have been lost among the Christmas boxes. Every Christmas ornament was examined. She searched the waste baskets and garbage. There was also a possibility that she had taken it off, as she usually did when doing housework, and placed it above the kitchen sink on a ledge. Delivery men came in and out of the kitchen on the day involved.
Under the circumstances we are of the opinion that the trial judge erred in granting the "summary" judgment on the issue of liability and in not submitting to the jury for resolution the issue of whether there had been a "mysterious disappearance" of plaintiff's ring, along with appropriate instructions defining that term in accordance with Midlo, supra, 160 So.2d 314, 315 (La. App. 1964). Thus, a reversal of the liability feature of the judgment and a remand of that issue for a new trial is mandated.
We consider next the issue of damages. Although plaintiff may have been competent to testify as to her estimate of the value of her ring, State v. Romero, 95 N.J. Super. 482, 487 (App. Div. 1967),[1] the record clearly discloses that she never specifically expressed such an opinion. Rather she testified, over objection, to the prices of two comparable rings that she had ascertained by visiting two jewelry stores after her ring had disappeared. This testimony was incompetent and should not have been received into evidence. Cf. Nixon v. Lawhon, 32 N.J. Super. 351, 356 (App. Div. 1954). Thus, the jury assessment of $2000 damages is also reversed and remanded for retrial.
At the retrial, plaintiff may offer expert testimony as to the value of the lost ring. The expert's opinion may be *245 given in answer to a hypothetical question containing a description of the ring as testified to by plaintiff. However, we concur with defendant's contention that the limit of liability under the instant policy is $1000. Although under the line of cases which we have approved "mysterious disappearance" is a separate and distinct loss from that by theft, nevertheless we are of the opinion that the limitation of liability to $1,000, which is set forth in bold-face type and clearly worded, is applicable not alone to a theft in its usual meaning, but also to the amended or extended meaning as described in the policy, which includes the separate risk of "mysterious disappearance." Cf. Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 41-42 (App. Div. 1973), aff'd 65 N.J. 152 (1974).
Defendant also claims that plaintiff is precluded from recovery because her acknowledged failure to notify the police of the ring's disappearance constituted a failure to comply with a condition precedent of the policy. This claim lacks merit. No contention is made that plaintiff failed to notify defendant "as soon as practicable." We are in agreement with the logic and holding in Conlin v. Dakota Fire Ins. Co., 126 N.W.2d 421, 425 (N.D. Sup. Ct. 1964), where the court, in considering a similar claim made under a policy provision identical to the one in the present case, said
This requirement is that notice of the loss be given as soon as practicable. * * * [T]imely notice was given the insurance company. The company was then in a position to notify whomever it deemed necessary.
Where, as in this case, neither the place nor time of the disappearance could be ascertained, notice to the police would be entirely fruitless and, therefore, impracticable. [Emphasis supplied]
Finally, we turn to defendant's attack on the court's granting of a $500 counsel fee to plaintiff, plus costs of $31.40. It asserts that no fees should have been allowed because the question of law was novel to this State and defendant should not be penalized in the absence of prior appellate *246 authority. We disagree. We find that the trial judge in awarding fees and costs did not mistakenly exercise the discretion reposed in him pursuant to R. 4:42-9(a) (6). Such an award gives an insured the full benefit of his insurance contract without unanticipated expenses over and above the premiums paid. See N.J. Mfrs. Ins. Co. v. Consolidated Mutual Ins. Co., 124 N.J. Super. 598, 600-02 (Law Div. 1973). However, since we have reversed in toto the judgment entered in the trial court, the amount allowed must be set aside, pending the final outcome of this matter, following retrial. It is to be noted that defendant abandons its allegation that the above rule constitutes an invalid exercise of the rule-making power of the Supreme Court.
In conclusion, the judgment entered in favor of plaintiff and against defendant is reversed and the matter is remanded for a new trial both as to liability and damages, in accordance herewith.
NOTES
[1] But see Evid. R. 19 and comment thereto (N.J. Rules of Evid. (1972), § 19-1 at 65).