288 N.J. Super. 152 (1996)
671 A.2d 1122
HARRAH'S ATLANTIC CITY, INC. D/B/A HARRAH'S MARINA HOTEL & CASINO, PLAINTIFF-APPELLANT,
v.
HARLEYSVILLE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1996.
Decided March 7, 1996.
*154 Before Judges PRESSLER, KEEFE and WEFING.
Jennine DiSomma argued the cause for appellant (Saiber, Schlesinger, Satz and Golstein, attorneys).
James S. Rothschild, Jr. argued the cause for respondent (Riker, Danzig, Scherer, Hyland and Perretti, attorneys; Mr. Rothschild, of counsel; Gloria L. Buxbaum, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff, Harrah's Atlantic City, Inc., d/b/a Harrah's Marina Hotel & Casino (Harrah's), appeals from the entry of summary judgment in favor of defendant, Harleysville Insurance Company (the insurer). Harrah's is an additional insured under a general liability policy issued by the insurer to Harrah's tenant, Talk of the Walk, Inc. (TOW). The principal question presented is whether the insurer was required to defend and indemnify Harrah's in a personal injury suit brought against Harrah's by a patron and an employee of TOW who were struck by an automobile driven by one of Harrah's parking valets as they were crossing the street in front of Harrah's. On cross-motions for summary judgment, the Law Division ruled in favor of the insurer. We disagree with that ruling and reverse.
The essential facts are not in dispute. On February 17, 1988, Sharon Lovitz, a principal and employee of TOW, met her friend, Sheila Gofstein. The two drove to Harrah's where Lovitz parked her vehicle on the first level of Harrah's parking garage. The *155 parking garage is separated from the hotel and casino by Old Brigantine Boulevard, a public street.
Lovitz and Gofstein had lunch at a restaurant located within Harrah's and then shopped at TOW. Lovitz was not working that day, but was helping Gofstein shop for a dress. After completing their shopping, they left TOW, walked back through the hotel, and out onto the sidewalk in front of the casino. In order to return to Harrah's parking garage, they had to cross Old Brigantine Boulevard. Thinking that it was safe to cross the street, they stepped out into the road and were struck by an auto operated by one of Harrah's parking valets. On November 13, 1989, Lovitz and Gofstein sued Harrah's for their personal injuries (hereinafter referred to as "the negligence suit").
The lease between Harrah's and TOW required TOW to purchase comprehensive general liability insurance "in the name of and for the benefit of" Harrah's and TOW. The lease also contained a separate indemnification clause requiring TOW to indemnify Harrah's under certain circumstances. On July 11, 1990, Harrah's sent a letter to TOW demanding that TOW indemnify it in the negligence suit and that TOW's insurer "provide coverage and defense of these claims."
Having received no response to their letter, Harrah's instituted a third party complaint against TOW in the negligence suit on November 16, 1990, seeking indemnification under the lease. The claim for contractual indemnification under the lease was subsequently resolved in favor of TOW by summary judgment on January 10, 1992. In a per curiam opinion, this court affirmed that decision on May 13, 1995.
Shortly before the summary judgment was entered in favor of TOW on the contractual indemnification claim, Harrah's wrote directly to the insurer demanding that it "defend and indemnify Harrah's for the claims alleged against it" in the negligence suit. The letter went unacknowledged, although the insurer admits receiving it. Consequently, on July 13, 1992, Harrah's filed the current suit (hereinafter referred to as the "declaratory judgment *156 suit") against the insurer seeking a declaratory judgment that the insurer was obligated to defend and indemnify it in the negligence suit. Alternatively, Harrah's sought a declaration that the insurer was estopped from denying coverage because of its failure to respond to Harrah's timely demand for coverage.
During the pendency of the declaratory judgment suit, Lovitz and Gofstein settled the negligence suit. Harrah's, as a self-insured, contributed $385,000. The remaining $212,500 of the settlement was paid by the insurer of the vehicle the valet was driving and by Custom Limos, an entity not specifically identified in this record but believed to be the owner of a vehicle parked in front of Harrah's that allegedly obstructed Lovitz's and Gofstein's view of the roadway.
In discovery, Harrah's learned that it was named as an additional insured under the policy issued by the insurer to TOW but that the wrong endorsement had been attached to the policy. Instead of attaching a "Managers or Lessors of Premises" endorsement, a "Manufacturers and Contractors Liability Insurance" endorsement had been attached to TOW's policy. The policy was reformed by court order to include the endorsement that the insurer claimed should have been inserted in the first instance. Harrah's agreed at oral argument before us that the sample endorsement now contained in the record represents the endorsement it would have accepted had it been given a copy of the policy at inception.
The endorsement provides coverage to Harrah's as an additional insured
only with respect to liability arising out of the . .. use of that part of the premises leased to [TOW] and shown in the Schedule....
The premises leased to TOW were not described on the endorsement schedule inasmuch as the policy was reformed and only a sample endorsement was provided. Nonetheless, the parties appear to agree that the lease between Harrah's and TOW accurately define the leased premises as approximately 2,034 square feet on the first floor of Harrah's hotel.
*157 The Law Division judge denied coverage and gave the following reason for his decision:
I find ... that to use the interpretation of ["]arising out of["] to cover the situation, ... is still too broad to apply to these circumstances. ["A]rising out of["] ... should be, I guess, clothed with some type of involvement, some stronger nexus than what we have here.
The judge also denied Harrah's estoppel claim, finding that Harrah's had suffered no prejudice by the insurer's delay in responding to Harrah's demand for a defense in the negligence suit.
Harrah's contends on appeal that the Law Division judge erred in both respects. We need not reach the second issue in light of our conclusion that the insurer owed Harrah's both a defense and indemnification in these circumstances.
The words used by the insurer in the endorsement, "arising out of the ... use of" the leased premises are not capable of precise definition. Aetna Cas. & Sur. Co. v. Ocean Acc. & Guarantee Corp., 386 F.2d 413 (3d Cir.1967). The phrase has been interpreted "in a broad and comprehensive sense to mean `originating from the use of' or `growing out of the use of'" the leased premises. Franklin Mut. Ins. v. Sec. Indem. Ins., 275 N.J. Super. 335, 340, 646 A.2d 443 (App.Div.), certif. denied, 139 N.J. 185, 652 A.2d 173 (1994). In Franklin, an invitee of the tenant fell on exterior steps while exiting from the tenant's luncheonette. The exterior steps were not part of the leased premises. Id. at 337-338, 646 A.2d 443. The wording of the endorsement in that case was the same as the wording used by the insurer in the endorsement issued to Harrah's. The court held that the landlord was entitled to indemnification under the tenant's general liability policy containing an endorsement naming the landlord as an additional insured. Id. at 341, 646 A.2d 443.
By using the "arising out of ..." phrase, the insurer in Franklin necessarily understood that it was providing coverage to the landlord against accidents occurring outside of the leased premises. Id. at 341, 646 A.2d 443. It is also clear that by wording the endorsement as it did, the insurer did not make coverage contingent on whether the tenant had any liability for the accident. *158 Therefore, the finding of liability against the tenant in Franklin was not a factor in determining the scope of the lessor's coverage.
What is not clear from the language used in the endorsement under review is to what extent the parties anticipated coverage for accidents occurring outside of the leased premises, i.e., the so-called "landscape of risk as contemplated by the policy[.]" Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). As the Franklin court said: "[t]he inquiry ... is whether the occurrence which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the leased premises and, thus, a risk against which they may reasonably expect those insured under the policy would be protected." Franklin, supra, 275 N.J. Super. at 341, 646 A.2d 443. The Franklin court held that an insurer would expect to provide coverage to a landlord under such an endorsement where there is "a substantial nexus between the occurrence and the use of the leased premises." Ibid. However, the requirement that there be a causal link or connection between the accident and the leased premises does not mean that there must be any degree of physical proximity between the leased premises and the scene of the accident. The two concepts are quite different. Thus, we would expect the outcome in the Franklin case to have been the same had the tenant's business guest fell on the building's exterior steps even if they were some distance from the luncheonette. That is so because in negotiating for such an endorsement in a lease the landlord is simply attempting to insure against the risk of liability generated by the business about to be conducted by the tenant, and place the cost of insuring that risk on the tenant. There is no prohibition in law or public policy against such a contract. Cf. Robinson v. Janay, 105 N.J. Super. 585, 253 A.2d 816 (App.Div.), certif. denied, 54 N.J. 508, 257 A.2d 107 (1969); Bernstein v. Palmer Chevrolet & Oldsmobile Inc., 86 N.J. Super. 117, 206 A.2d 176 (App.Div. 1965). Consequently, where the landlord can trace the risk creating its liability directly to the tenant's business presence, it is not unreasonable for the landlord to expect coverage, *159 inasmuch as it can be truly said that the accident originated from or grew out of the use of the leased premises. Id. at 340, 646 A.2d 443. Accord Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 38, 312 A.2d 664 (App.Div. 1973), aff'd, 65 N.J. 152, 319 A.2d 732 (1974).
We are satisfied that the requisite nexus existed under the facts in this case. Lovitz and Gofstein parked in Harrah's garage primarily to shop at TOW. When they completed their shopping, they went directly toward the garage to retrieve the car and were injured in that process. Thus, Harrah's liability arose out of the risk generated by TOW's business on the premises. The insurer cannot reasonably contend that it did not anticipate having to insure against an accident occurring in the course of such conduct by an invitee of TOW. Harrah's had the duty to provide a safe means of ingress and egress to TOW's business visitors and employees. Warrington v. Bird, 204 N.J. Super. 611, 499 A.2d 1026 (App.Div. 1985), certif. denied, 103 N.J. 473, 511 A.2d 653 (1986). That duty arises solely from TOW's use of the leased premises and is not discharged until such visitors and employees leave the premises safely. Inasmuch as Harrah's liability in this case arose out of a breach of that duty, it fell within the "landscape of risk" Harrah's reasonably could expect to be insured against. Weedo, supra, 81 N.J. at 247, 405 A.2d 788.
The insurer contends that finding coverage for Harrah's in this case would be inconsistent with our determination that TOW was not contractually obligated to indemnify Harrah's for this accident under the lease. We disagree. Entirely different principles of law apply to the interpretation of an indemnification agreement as opposed to an insurance policy.
In the first appeal where the construction of the lease indemnification clause was at issue, we were guided by the well established legal principle that indemnity provisions must be strictly construed against the indemnitee, especially where, as here, the indemnitee (Harrah's) sought indemnification against its *160 sole negligence. Ramos v. Browning Ferris Industries, Inc., 103 N.J. 177, 191, 510 A.2d 1152 (1986). In contrast, insurance contracts "should be construed liberally in [the insured's] favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'" Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)). Further, when a policy contains an ambiguity, i.e., the phrasing chosen by the insurer does not permit the average insured to "make out the boundaries of coverage," the ambiguity must be construed in favor of the insured. Weedo, supra, 81 N.J. at 247, 405 A.2d 788; Erdo v. Torcon Constr. Co., Inc., 275 N.J. Super. 117, 120, 645 A.2d 806 (App.Div. 1994). These differences in interpretive principles compel the conclusion in this case that Harrah's was entitled to coverage in the negligence suit.
Reversed and remanded for entry of judgment in favor of Harrah's on the coverage issue and whatever further proceedings may be necessary to determine damages.