706 A.2d 206

LIBERTY VILLAGE ASSOCIATES, PLAINTIFF–RESPON-DENT/CROSS–APPELLANT, v. WEST AMERICAN INSURANCE COMPANY, DEFENDANT–APPELLANT/CROSS–RESPON-DENT, AND THE WILLIAM CARTER COMPANY AND TRANS-PORTATION INSURANCE CO., DEFENDANTS–RESPON-DENTS.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1998—Decided February 18, 1998.

Before Judges PETRELLA, SKILLMAN and LESEMANN.

*Alan H. Bernstein* argued the cause for defendant-appellant/cross-respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Mr. Bernstein,* of counsel and on the brief; *David J. Klein,* on the brief).

*Richard E. Snyder* argued the cause for plaintiff-respondent/cross-appellant (*Morgan, Melhuish Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Mr. Snyder,* of counsel and on the brief).

*Gerard M. Green* argued the cause for defendant-respondent The William Carter Company (*Charles Peter Hopkins, II,* attorneys; *Mr. Green,* on the brief).

*Ernest W. Schoellkopff* argued the cause for defendant-respondent Transportation Insurance Company (*Connell, Foley & Geiser,* attorneys; *John B. Lavecchia,* of counsel; *Mr. Schoellkopff* on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

This case concerns an insurance policy provided by a commercial tenant for the benefit of its landlord. The policy named the

landlord as an "additional insured," but only with respect to incidents arising "out of the use of" the tenant's premises. The question presented is the applicability of that language to an accident which occurred off the tenant's premises, but close to those premises, involving a prospective customer approaching the tenant's store. Under policy language similar to that here, this court found coverage in *Franklin Mutual Ins. Co. v. Sec. Indem. Ins. Co.*, 275 *N.J.Super.* 335, 646 *A.*2d 443 (App.Div.1994) and *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.*, 288 *N.J.Super.* 152, 671 *A.*2d 1122 (App.Div.1996). Plaintiff landlord, a shopping center, argues that those holdings dictate a similar conclusion here. The tenant's insurer, however, says that the case is critically different from *Franklin* and *Harrah's* and compels a different result.

The facts can be set out briefly. Liberty Village Associates (Liberty) operates a shopping center consisting of approximately eighty-eight stores. One of those stores is owned by the William Carter Company (Carter) and another is operated as the Gourmet Basket (Gourmet). On a snowy day, February 26, 1994, Marlene Phillips went shopping at Liberty. She first visited the Carter store and then crossed an open cobblestone street and sidewalk to visit Gourmet, a shop in a different building. Just before she reached a covered entrance to Gourmet, she slipped on what she believes to have been ice and fell, with her feet landing under the covered entranceway. She subsequently filed suit against Gourmet and Liberty.

There is no question that the fall occurred outside of the premises leased to Gourmet. There is also no question that the fall took place within very close proximity to those premises in an area where Gourmet employees normally provided maintenance and snow and ice removal. They had performed no such functions on the day in question, however.

The lease between Liberty and Gourmet provided that,

Tenant's liability insurance shall indemnify and save Landlord harmless from and against any and all claims, actions, damages, liability and expenses in connection

with loss of life, personal injury and/or damaged property arising from or out of any occurrence in, upon or at the premises, or any part thereof. . . .

Pursuant to that lease obligation, Gourmet obtained from defendant West American Insurance Company (West American) a liability policy which named Liberty as an additional insured. However, it also stated that Liberty had that "additional insured" status "only with respect to liability arising out of the ownership, maintenance or use" of the premises leased to Gourmet.

Carter maintained its liability insurance with Transportation Insurance Co. (Transportation) and that policy also named Liberty as an additional insured.[1] Based on the two policies referred to, and while the Phillips personal injury action was pending, Liberty sued Gourmet's insurer (West American)[2] and Carter and Transportation, asserting coverage in its favor under either or both the policies maintained by its tenants. Carter and Transportation sought summary judgment dismissing the complaint as to them, and the trial court granted that motion, concluding that the accident "did not arise out of the use of the Carter premises."

Liberty and West American then jointly settled Phillips' injury claim for $20,000. They also submitted cross-motions for summary judgment under an agreed statement describing the issue to be resolved as whether the *Harrah's* decision "controls the instant matter; *i.e.*, whether Liberty Village is entitled to coverage under the West American additional insured endorsement." They agreed that the losing party would bear the entire $20,000 payment to Phillips and also agreed that the prevailing party "will apply to the court for attorney's fees and interest."

---

[1] Transportation seems to have mistakenly issued the wrong form of policy to Carter. The policy referred to construction activities rather than the operation of a store. The trial court concluded that the latter is "probably" what had been intended by the parties and dealt with the policy on that basis.

[2] Gourmet is not a party to this suit. We have been advised that it is out of business and thus Liberty has proceeded only against Gourmet's insurer.

The trial court granted summary judgment for Liberty, concluding that, "The policy of West American covered the landlord with respect to injuries arising out of the use of the demised premises. This injury did arise out of the use of the demised premises." However, the judge then denied Liberty's request for counsel fees, saying that he would "exercise the discretion that I have" to deny the application.

West American appeals that summary judgment in favor of Liberty. Liberty cross-appeals from the denial of counsel fees. In addition, West American claims that if this court affirms the decision that it has responsibility under its policy, then the court should reverse the grant of summary judgment to Carter and Transportation so that Carter and/or its insurer bears the same responsibility as West American.

We are satisfied that the summary judgment in favor of Liberty and against West American, should be affirmed. We are also satisfied that the status of Carter is significantly different from that of Gourmet; that the Carter policy provides no coverage for the Phillips fall; and that the summary judgment in favor of Carter and its insurer, Transportation, should be affirmed. We find the trial court erred, however, in its rejection of Liberty's application for an award of counsel fees.

I

In *Franklin Mutual Ins. Co. v. Sec. Indem. Ins. Co.,* *supra,* 275 *N.J.Super.* 335, 646 *A.2d* 443 this court dealt with an "additional insured" provision virtually identical to that here. The policy had been obtained by a tenant operating a luncheonette (the Jury Box) within an office building containing a number of tenants. It covered the landlord as an "additional insured" but "only with respect to liability arising out of the ownership, maintenance or use" of the premises leased to the tenant. The accident in question occurred on the exterior stairs leading away from the Jury Box and involved a fall by a customer who had just left the luncheonette. She slipped on a substance on the top step, her

heel caught a chipped tile and she fell down the steps. Her expert testified that the step on which she slipped was sloped, that the tiles were not slip resistant, and the chipped tile had created a hazard. Repairs and maintenance of the steps were the obligation of the landlord, not the tenant.

When the fall victim sued the landlord as well as the tenant luncheonette, the landlord asserted coverage as an additional insured under the tenant's policy. The trial court granted the carrier's motion for summary judgment but this court reversed. We noted that additional insured coverage under the policy was not limited to an occurrence "*within* the leased premises" but rather, coverage was defined by the significantly broader phrase, "arising out of the use" of the premises. We said that phrase,

must be interpreted or construed in a broad and comprehensive sense to mean 'originating from the use of' or 'growing out of the use of' the premises leased to Jury Box. Thus, there need be shown only a substantial nexus between the occurrence and the use of the leased premises in order for the coverage to attach. The inquiry, therefore, is whether the occurrence which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the leased premises and, thus, a risk against which they may reasonably expect those insured under the policy would be protected.

[275 *N.J.Super.* at 340–341, 646 A.2d 443.]

This court concluded that the accident in question was a risk against which the tenant's insurer had provided protection. We found there was a "relationship," a "substantial nexus," between the "fall on the exterior steps, and the use of the premises leased to Jury Box," and thus "the accident arose out of the use of premises leased to Jury Box in the broadest and most comprehensive sense."

Two years after the decision in *Franklin Mutual,* this court applied those same principles to find "additional insured" coverage for a landlord under a tenant's liability policy in *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., supra,* 288 N.J.Super. 152, 671 A.2d 1122. There the tenant was a store known as Talk of the Walk, Inc. (TOW) which leased space within Harrah's hotel in Atlantic City. The lease required the tenant to obtain comprehen-

sive general liability insurance to cover Harrah's, and TOW did so. It obtained from Harleysville Insurance Company (Harleysville) a policy providing coverage to Harrah's as an additional insured but, just as in *Franklin Mutual* and our present case, it provided that coverage, "only with respect to liability arising out of the ... use of" the TOW premises.[3]

Although the policy language in *Harrah's* was essentially the same as that in *Franklin Mutual* (and that used here) the facts were quite different. In *Harrah's*, the injured parties were a principal/employee of TOW and her friend, who had driven to Harrah's and parked in its garage, a detached building across the street from the hotel. They then entered the hotel, ate lunch at a restaurant within the hotel and shopped at TOW. When they left TOW they walked through the hotel, onto the sidewalk in front of the hotel and were in the process of crossing the street to enter the hotel's garage when they were struck by a vehicle driven by one of Harrah's parking valets. They filed a personal injury suit against Harrah's, and Harrah's called on Harleysville to defend and indemnify it against the claim. Harleysville denied responsibility; Harrah's filed suit against Harleysville; Harleysville moved for summary judgment dismissing that suit and the trial court granted the motion. This court reversed.

The *Harrah's* court relied generally on the reasoning in *Franklin Mutual*. We noted that the same key words, "arising out of the use of" the leased premises, defined coverage in each case. Our opinion repeated the language of *Franklin Mutual*, that the quoted phrase "in a broad and comprehensive sense ... [means] 'originating from the use of' or 'growing out of the use of' the leased premises." *Id.* at 157, 671 *A*.2d 1122. We reaffirmed that coverage under such language is afforded for accidents "occurring

---

[3] In fact the wrong endorsement had been attached to the TOW policy, providing "manufactures and contractors liability" coverage rather than the "managers or lessors of premises" endorsement that was intended. The policy was reformed by the court to provide coverage in the form noted above which all acknowledged to be what was intended by the parties.

outside of the leased premises," and we also said that coverage was not "contingent on whether the tenant had any liability for the accident." *Ibid.*

The *Harrah's* opinion also noted that "physical proximity between the leased premises and the scene of the accident" was not essential to find coverage. *Ibid.* It said further that by insisting that a tenant provide such coverage, "the landlord is simply attempting to insure against the risk of liability generated by the business about to be conducted by the tenant, and place the cost of insuring that risk on the tenant. There is no prohibition in law or public policy against such a contract." *Id.* at 158, 671 *A.*2d 1122. Accordingly, we concluded, "where the landlord can trace the risk creating its liability directly to the tenant's business presence, it is not unreasonable for the landlord to expect coverage, inasmuch as it can be truly said that the accident originated from or grew out of the use of the leased premises." *Id.* at 158–159, 671 *A.*2d 1122. Thus, under all the facts of the case, we found "the requisite nexus" between the tenant's business and the accident in question and concluded that the landlord's liability "fell within the 'landscape of risk' that Harrah's reasonably could expect to be insured against." *Id.* at 159, 671 *A.*2d 1122.

Despite the parties' reference to *Harrah's* in the agreed statement submitted to the motion judge, it is apparent that, as it relates to Gourmet, this case is much closer to *Franklin Mutual* than to *Harrah's.* Indeed, but for the fact that the injured party in *Franklin Mutual* had just left the tenant's premises, while here the injured party was approaching the tenant's premises (which we regard as an immaterial distinction) there is no significant difference between the two cases. In both, the critical policy language provides coverage for an incident "arising out of the use of" the leased premises. In both a fall occurred outside of, but very close to, the leased premises. In both, the injured party was where she was precisely because of the tenants' use of the premises: it was the tenant's business that had brought her to the area. And in both, to use the language of *Franklin Mutual,* the

incident was something "originating from," or "growing out of," the "use of" the leased premises. Thus, if one concludes (as the court did in *Franklin Mutual*) that the occurrence there was "in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the leased premises and, thus, a risk against which they may reasonably expect those insured under the policy would be protected," that same conclusion must follow in this case. Just as there was a "substantial nexus" between the occurrence and the use of the leased premises in *Franklin Mutual*, so there is such a "substantial nexus" here.

In short, the holding and reasoning of *Franklin Mutual*, with which we are in full accord, lead inexorably to the conclusion that the injury here falls within the scope of protection afforded Liberty as an "additional insured" under the policy obtained by Gourmet. Questions of precisely where the fall took place— whether within or slightly outside of the extended sidelines of the Gourmet property, or completely or only partially under the overhang in front of the Gourmet store, and lease provisions dealing with maintenance and snow or ice removal, are not dispositive. As noted in *Harrah's*, insurance coverage for the landlord is not contingent upon a finding of the tenant's liability. 288 *N.J.Super.* at 159, 671 *A.*2d 1122. Indeed, the very premise of the need for the policy is the actual or potential liability of the landlord— not the tenant.

## II.

West American maintains that its position and that of Gourmet on the one hand, and the position of Carter and Transportation on the other hand, are identical. From that premise it argues that the grant of summary judgment in favor of Carter and Transportation, dismissing Liberty's claim against them, compels a similar result respecting Liberty's claim against West American. Alternatively, it says that if we affirm the trial court's decision that West American's insurance policy provides benefits to Liberty

here, then we should reverse the dismissal of Liberty's claim against Transportation and hold that Transportation's policy provides the same benefits to Liberty as does West American's policy.

 Preliminarily, we note a substantial question as to whether West American has standing to raise these issues. West American filed no cross-claim against Carter or Transportation, nor did it participate in the summary judgment motion brought by Carter and Transportation which led to the dismissal of Liberty's claim against them. Generally one defendant in a tort action may not appeal a judgment favoring a co-defendant unless the claimed error also prejudicially affected the proposed appellant's own defense. *Tiger v. American Legion Post No. 43*, 125 *N.J.Super.* 361, 370, 311 *A.2d* 179 (App.Div.1973); *Donofrio v. Farr Lincoln Mercury, Inc.*, 54 *N.J.Super.* 500, 504–505, 149 *A.2d* 611 (App.Div. 1959). Here West American shows no prejudice to its own position, and with no cross-claim for contribution or indemnification, it is difficult to see how it could be said to have standing to challenge the decision in favor of Carter and Transportation.

Nevertheless, the issue of the different rights and obligations of the two tenants and their respective insurers is a significant one. It has been briefed and argued and we deem it appropriate to respond to it.

██ We are satisfied that with respect to several factors that may bear on a "substantial nexus" analysis the status of Carter is significantly different from that of Gourmet.

One such factor is the relationship between the injured party's presence at the scene and that of the tenant. The accident occurred as Ms. Phillips was about to enter the Gourmet shop. It was the presence and location of Gourmet that had brought her to the spot where she fell—not that of Carter.

Another factor is the physical proximity between the accident scene and the tenant's presence. Ms. Phillips was very close to the Gourmet premises at the time she fell, under or almost under, the sheltering overhang in front of Gourmet's entrance and within

a few feet of its doorway.[4] Carter, on the other hand, was on the other side of an intervening roadway and sidewalk.

A third factor is maintenance responsibility for the area where the fall occurred. Gourmet had such responsibilities, including the obligation to remove snow and ice in the general area where Ms. Phillips fell,[5] while Carter did not. Whatever common area obligation Carter may have had for maintenance or snow removal was related to the area adjacent to its leased premises, not that of Gourmet.

Indeed, the only relationship Carter had to anything that took place on the day in question comes from Ms. Phillips' having visited Carter before she set out for Gourmet. In terms of any relationship to the accident, that was an immaterial happenstance. It had no more significance or connection with the injury than would have arisen from six, eight, ten or more prior stops that Ms. Phillips, hypothetically, might have made in other Liberty Village shops before heading for Gourmet. Any "relationship" between such prior visits and the fall in front of Gourmet was so attenuated as to be virtually nonexistent. If one were to stretch a concept to say there was some "nexus" between the earlier visits and the later fall, it certainly could not be termed a "substantial nexus."

Whichever of the various formulations in *Franklin Mutual* or *Harrah's* are applied here to test whether the Phillips accident arose out of "the use of" particular premises, the answer is consistently affirmative respecting the Gourmet premises and consistently negative for the Carter premises. Thus, for the

---

[4] While *Harrah's* noted that physical proximity between an accident scene and leased premises was not essential to a finding that the accident arose "out of the use" of those premises, it did not say, and there is no reason to find, that such proximity is not one of the factors that should be considered in deciding the essential "substantial nexus" issue.

[5] We do not imply that Gourmet was liable for the Phillips injury because of non-compliance with any of those obligations. We note the obligations only to demonstrate the relationship between the Gourmet premises and the nearby common area where the fall occurred.

reasons stated, it is reasonable and realistic to say that the fall was one "originating from" or "growing out of" the use of the Gourmet premises. It did not originate from, grow out of, or have anything to do with the Carter premises.

There was a "relationship" and a "substantial nexus" between the Gourmet premises and the Phillips accident. There was neither a relationship (in any realistic sense) and certainly no "substantial nexus" between the Carter store and the fall.

So too with respect to the probable intent of the parties to the insurance contract: one can readily believe that it would make sense to them to have Gourmet provide insurance for the landlord concerning the area in front of the Gourmet store, where Gourmet has maintenance responsibilities, and pedestrians are likely to be present because Gourmet is there. It would make no sense to have Carter provide such insurance for something involving no link to Carter.

In sum, just as we are satisfied that the accident here arose "out of the use of" the Gourmet premises, so we are satisfied that it did not arise "out of the use" of Carter's premises. The two situations are critically different and the decision in one certainly does not dictate, or even argue for, a similar decision in the other. The Law Division judge was correct in his decision to dismiss the claim against Carter's insurer, Transportation, and also in his decision not to dismiss the claim against West American, but rather to find that West American's policy does provide coverage for Ms. Phillips' accident.

### III.

The trial court's denial of West American's request for the award of counsel fees was made without any statement of reasons. The court simply announced that it chose to exercise its discretion against making such an award.

While the normal rule in this state is to require each litigant to pay its own counsel fees, there are certain exceptions to

that policy, and a suit seeking coverage under a liability insurance policy is one of those exceptions. *R.* 4:42–9(a)(6). The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy. *Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 356, 634 *A.*2d 74 (1993); *Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 572, 267 *A.*2d 527 (1970). An insured is not required to show bad faith or arbitrary action by an insurer in order to recover its fees. *Corcoran v. Hartford Fire Ins. Co.,* 132 *N.J.Super.* 234, 333 *A.*2d 293 (App.Div.1975).

The parties in this case specifically provided that the prevailing party could apply to the court for the award of counsel fees. While the stipulation does not, of course, promise such an award of fees, it does suggest that both anticipated the likelihood that the loser would pay the winner's fee. In view of the provisions of *R.* 4:42–9(a)(6), such an expectation would certainly seem reasonable.

While the granting or denial of a counsel fee application is frequently described as a matter within the trial court's discretion, the absence of any findings or statement of reasons by the court here undercuts what might otherwise be an inclination to defer to that discretion. It is impossible to weigh the propriety of the determination when the court has not told us the reason for its conclusion.

No reason is suggested why the apparent expectation of the parties respecting the payment of fees should not be carried out and why the policy underlying the rule should not be applied here. And certainly in view of *Franklin Mutual* and *Harrah's,* a conclusion that West American's policy does cover this accident could not be surprising to anyone. On balance, the denial of a counsel fee award should be reversed.

The matter is reversed and remanded with respect to the counsel fee issue; in all other respects the determinations of the Law Division are affirmed.