16 A.3d 399 (2011)
419 N.J. Super. 68
TOWNSHIP OF WHITE, Plaintiff-Respondent,
v.
CASTLE RIDGE DEVELOPMENT CORPORATION, a/k/a Castle Ridge in the Highlands, Defendant-Appellant.
No. A-2790-09T3.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 2011.
Decided March 11, 2011.
*401 Lyn Paul Aaroe, Belvidere, attorney for appellant.
Florio Perrucci Steinhardt & Fader, attorneys for respondent (Jessica L. Cardone, of counsel and on the brief).
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
Defendant Castle Ridge Development Corporation (Castle Ridge) appeals from the grant of summary judgment to plaintiff Township of White (Township), requiring defendant to reimburse the Township for the costs of its winter maintenance services on defendant's roadway to date; to provide winter maintenance until such time as the road is dedicated and accepted by the Township; and to pay the Township's reasonable costs and attorney's fees in this matter. We affirm.
The facts are undisputed. Castle Ridge is the owner-developer of about forty-seven acres of land located in the Township. On May 8, 2001, the Township's Planning Board (Board) adopted a resolution granting Castle Ridge preliminary major subdivision approval to create fifteen lots on this property. As part of this approval, Castle Ridge agreed to construct single family homes on each lot in conformity with the Township's zoning restrictions. This resolution further provided that:
The approval of this plan shall in no way be construed as acceptance of any street, drainage system or other improvement required by this Board, nor shall such approval obligate the Township in any way to maintain or exercise jurisdiction over such street, drainage system or other improvement, prior to acceptance of the improvement by the governing body.
On September 14, 2004, the Board adopted a resolution granting Castle Ridge final subdivision approval. As part of this approval, the Township and Castle Ridge agreed to execute a developer's agreement, which the parties accomplished on April 7, 2005.
Most pertinent for present purposes, the developer's agreement provided in section 1.1 that Castle Ridge is to be bound by both the preliminary resolution of May 8, 2001 and the final resolution of September 14, 2004. In fact, the agreement specifically incorporated the language of the May 8, 2001 resolution. The agreement also provided in section 2.1 that each house would face a central road to be constructed by Castle Ridge at its own expense, to be designated Lisa Court, which would intersect County Route 623 on one side and end in a cul-de-sac on the other.
Under sections 4.5, 5.4, and 8.1 of the agreement, Castle Ridge is obligated to maintain and repair the roadway and storm drain facilities it installed. Section 4.5 provides for a two-year guarantee, from the date of completion, for maintenance of all Township-owned property. Section 5.4 states that all of Castle Ridge's maintenance obligations are covenants running with the land, and provides the Township with the ability to recover legal fees in any action to enforce the maintenance provision. Most significant, section 8.1 states:

Maintenance and Repair After Construction. The Township shall have the right, but not any obligation, of maintenance and inspection of storm drainage facilities and the roadway which constitutes a part of the improvements to be completed by the Developer [Castle Ridge] as defined in this Agreement: If the Developer or owner neglect to make *402 repairs within a reasonable time period, the Township shall have the authority to have necessary work performed and to charge the Developer or owner for the actual cost of work done.
In addition, section 7.2 states:
Developer shall correct and make safe any dangerous or unsafe condition created by the Developer, or those acting for it, adversely affecting public safety or general welfare, or affecting the safety or welfare of other occupants of the project, as determined by the appropriate enforcement official of the Township.
The agreement further provides that Lisa Court will be dedicated to the Township as a public street after title is passed to the Township.
Immediately thereafter, Castle Ridge began construction on the fifteen lots of its subdivision. According to Castle Ridge, construction of houses and curtilage has been completed on eight of the fifteen lots, which are currently inhabited by Township residents, but the company has ceased construction on the remaining seven lots because of the economic downturn. Castle Ridge does not contemplate that the company will be able to complete construction in the near future.
Castle Ridge also admits that while partial improvements of the development's infrastructure have been completed  installation of drainage, curbing and pavement base course  the pavement on Lisa Court has yet to be completed. According to the Township Engineer, the Township has not accepted Lisa Court as part of its municipal roadway network because Castle Ridge has not completed the improvements that are required by the Township Code, the developer's agreement, and the approval resolutions. Furthermore, the Township will not accept Lisa Court until Castle Ridge has fixed defective pavement, finished drainage structures on the side of the road, landscaped around the road, placed traffic signs, and installed required monuments on the side of the road. Similarly, there is no indication in the record that title to Lisa Court has passed to the Township as required by the agreement.
Castle Ridge maintained Lisa Court, including snowplowing and ice control during the winter months, as required by the developer's agreement, until December 24, 2008. Since then, however, Castle Ridge has ceased all maintenance on the roadway, presumably due to the economic downturn and the company's financial condition.
After receiving numerous complaints from residents of the development, the Township began to provide winter maintenance on Lisa Court. On January 15, 2009, Castle Ridge sent a letter to the Township stating that it was no longer responsible for the maintenance of Lisa Court and would thus no longer be providing services. The Township responded on January 19, 2009, seeking reimbursement and threatening litigation if it were not reimbursed. Castle Ridge replied on January 21, 2009, insisting that it was no longer responsible for the maintenance of Lisa Court.
Consequently, the Township continued to provide winter maintenance on Lisa Court for the remainder of the season, providing snow plowing and salting of Lisa Court on twelve occasions from December 24, 2008 through March 2, 2009 at a cost totaling $2,865. The Township ultimately filed a complaint in the Law Division on March 30, 2009, seeking reimbursement under the developer's agreement for the money it expended on winter maintenance of Lisa Court, as well as attorney's fees for its enforcement litigation. The complaint also sought a declaration that Castle Ridge is liable for all winter maintenance until *403 the Township accepts dedication of Lisa Court.
Following argument on the Township's motion for summary judgment, the court entered an order granting the Township the entirety of the relief it sought. On March 4, 2010, the court also granted the Township's subsequent application for attorney's fees.
On appeal, Castle Ridge argues that the Law Division incorrectly interpreted the developer's agreement as imposing upon it a maintenance obligation, and, alternatively, that such a provision would be void for public policy because the Township is collecting tax revenue on the completed properties. We disagree with both contentions and will address them in the order raised.

I.
"[W]hether a contract provision is clear or ambiguous is a question of law." Grow Co. v. Chokshi, 403 N.J.Super. 443, 476, 959 A.2d 252 (App.Div.2008). The court's role is to determine whether the provision in question is "susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div. 1997). "`If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'" CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v. SB Rental I, LLC, 410 N.J.Super. 114, 120, 980 A.2d 1 (App.Div.2009) (quoting FDIC v. Prince George Corp., 58 F.3d 1041, 1046 (4th Cir.1995)). "To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their `plain and ordinary meaning.'" Nester, supra, 301 N.J.Super. at 210, 693 A.2d 1214 (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F.Supp. 275, 282 (D.N.J.1992), aff'd, 993 F.2d 877 (3d Cir. 1993)). However, summary judgment is precluded if the "scope of the ... agreement cannot be determined by solely relying upon the parties' writing [because it] may be plausibly interpreted in different ways." Grow Co., supra, 403 N.J.Super. at 476, 959 A.2d 252.
Here, although section 8.1 of the agreement, which deals with maintenance and repair after construction, does not explicitly state that the developer has the responsibility for maintenance of the roadway until its acceptance by the municipality, that is the only fair and reasonable implication to be drawn from this provision. This is especially so where, as section 7.2 expressly directs, such maintenance is required for the safety or welfare of the residents of the development or members of the public. On this score, the failure to remove snow and ice from the roadway can adversely affect public safety and welfare. Moreover, the provision following section 8.1, section 9.1, explicates how the developer's improvements will eventually be transferred to the ownership and control of the Township, at which time the Township will be obligated to provide maintenance by law. See infra at 12-14. Lest there be any doubt as to Castle Ridge's responsibility in this matter, the Board's initial approval resolution, which was incorporated into the developer's agreement by reference, stated that the Township has no obligation "in any way to maintain or exercise jurisdiction over such street, drainage system or other improvement, prior to acceptance of the improvement by the governing body."
Castle Ridge nevertheless argues that the trial court erred in construing the term "maintenance" in section 8.1 to include winter maintenance. We disagree as the plain meaning of the term encompasses snow and ice removal.
*404 To "maintain" something, such as a roadway, means to "to keep in an appropriate condition, operation, or force; keep unimpaired." Random House Dictionary (2010 ed.). Moreover, the act of maintenance is commonly defined as "[t]he care and work put into property to keep it operating and productive; general repair and upkeep." Black's Law Dictionary 965 (7th ed.1999). These definitions, as noted by the trial court, inherently include winter maintenance because the removal of snow and ice is necessary to "keep [Lisa Court] operating and productive."
We have interpreted general "maintenance" provisions similarly in other contexts. For example, in Liberty Village Associates v. West American Insurance Company, 308 N.J.Super. 393, 398, 706 A.2d 206 (App.Div.), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998), an insurance policy provided an indemnification for an insured "only with respect to liability arising out of the ownership, maintenance or use" of the premises. We found that "maintenance" under the agreement included snow and ice removal, and that the insurer had to indemnify the insured for a third party's injuries related to the insured's failure to provide for snow and ice removal. Id. at 402, 706 A.2d 206. Similarly, in the area of commercial premises tort liability, the Court in Mirza v. Filmore Corporation, 92 N.J. 390, 401, 456 A.2d 518 (1983), held that an owner's liability for the "maintenance of the public sidewalk abutting commercial properties under [Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981)] includes [the] removal or reduction of the hazard of snow and ice."
Lastly, this construction of the developer's agreement is consistent with, and supported by, Castle Ridge's course of performing snow and ice removal as part of its winter maintenance services until it encountered financial difficulty. In construing vague or ambiguous provisions of a contract, our courts "will imply a reasonable missing term or, if necessary, will receive evidence to provide a basis for such an implication." Satellite Entm't Ctr., Inc. v. Keaton, 347 N.J.Super. 268, 276, 789 A.2d 662 (App.Div.2002). "In particular, courts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing, usage and course of performance." Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 328 (3d Cir.2006) (applying New Jersey law). A course of performance includes repeated occasions for performance by either party when the other party has knowledge of the nature of the performance and an opportunity to object to it. 49 N.J. Practice Procedure § 7:25 (2010 ed.) (citing Restatement (Second) of Contracts § 202(4) (1979)).
Here, Castle Ridge freely assumed responsibility for winter maintenance of Lisa Court until December 24, 2008, and admittedly only stopped doing so for economic reasons and not because its legal duty terminated by operation of law or contract. We may reasonably infer from this course of performance, therefore, that Castle Ridge believed it bore the responsibility under the developer's agreement for winter maintenance, inclusive of snow and ice removal, which continued beyond defendant's unilateral cessation of services.

II.
Alternatively, defendant argues that a provision in a developer's agreement that imposes a maintenance obligation on the developer is void for public policy because the Township is collecting property tax revenue on the completed houses. We disagree.
*405 A municipality has no maintenance obligation with respect to private roads. Island Improvement Ass'n of Upper Greenwood Lake v. Ford, 155 N.J.Super. 571, 574, 383 A.2d 133 (App.Div.1978). However, a municipality may, under N.J.S.A. 40:67-23.1, voluntarily assume the obligation, at its own expense, to provide road maintenance on private roads. See Klink v. Twp. Council of Monroe, 181 N.J.Super. 25, 29, 436 A.2d 545 (App.Div. 1981). Moreover, under N.J.S.A. 40:67-23.3, a municipality is obligated to either provide, or reimburse, a private community for winter maintenance on the community's private roads. See Stonehill Prop. Owners Ass'n v. Twp. of Vernon, 312 N.J.Super. 68, 79, 711 A.2d 346 (App.Div. 1998).
The process of dedication and acceptance is a method by which property is transferred to a municipality's control. See Home Builders League of S. Jersey, Inc. v. Twp. of Evesham, 182 N.J.Super. 357, 359-60, 440 A.2d 1361 (App.Div.1981). A municipality may enter into a developer's agreement with a developer which provides for the transfer and dedication to the municipality of a road built for the intended housing development. See Ramapo River Reserve Homeowners Ass'n v. Borough of Oakland, 186 N.J. 439, 896 A.2d 459 (2006). Similarly, under N.J.S.A. 40:55D-53(a) and N.J.S.A. 40:55D-65, the municipality may adopt an ordinance which establishes a process that a developer must undergo prior to the municipality's acceptance of the road or improvement. See Talcott Fromkin Freehold Assocs. v. Freehold Twp., 383 N.J.Super. 298, 891 A.2d 690 (Law Div.2005). However, prior to dedication and acceptance pursuant to the procedure provided for by the municipality's zoning ordinance, the road remains the private property of the developer. See Island Improvement Ass'n, supra, 155 N.J.Super. at 574, 383 A.2d 133. Thus, aside from the exceptions noted above, the municipality has no responsibility for the maintenance of private property, and the responsibility lays with the property owner, typically the developer. Ibid.; see also N.J.S.A. 40:48-2.47 (granting municipalities the power to adopt ordinances which require owners of private roads or highways to provide for snow or ice removal); N.J.S.A. 40:65-12 (granting municipalities the power to adopt ordinances which compel owners of property abutting sidewalks to provide for snow and ice removal).
A municipality that is obligated to provide winter maintenance services, either because it has accepted dedication of the road or because N.J.S.A. 40:67-23.3 applies, may not force a developer to indefinitely provide or reimburse the municipality for such services through a developer's agreement. See Ramapo, supra, 186 N.J. at 449, 896 A.2d 459. This protects the property owner from paying for the services twice, once through property taxes and a second time through a higher purchase price to cover the provision of such services. Id. at 451, 896 A.2d 459. A municipality may temporarily delegate its responsibility to provide road maintenance, but "such delegation must terminate once the developer is required to terminate its control." Id. at 453, 896 A.2d 459.
In Evesham, supra, the Home Builders League, an association of home developers, filed a lawsuit seeking reimbursement from the municipality for the cost of trash collection, street lighting and snow plowing services provided by the developers on streets that were dedicated but not yet accepted by the Township. In particular, the builders argued that it was inequitable for the Township to require them to provide these services because the Township was receiving property tax revenues on completed property. Ibid. We rejected *406 this argument and held the builders responsible for providing these services since they were the owners of the roadways in question. Id. at 360-61, 440 A.2d 1361. We further concluded that the Township would only be responsible for the provision of such services after it accepted the builders' dedication of the road, which had the effect of making the road Township property. Ibid. In this regard, acceptance could be effectuated through an ordinance or by an affirmative act of dominion or control of the roadway by the municipality. Ibid.
In Ramapo, a municipality and a builder of a private community entered into a developer's agreement by which the developer agreed to provide winter maintenance on the private community's roads until the developer completed the property and transferred control to the homeowners association. Ramapo, supra, 186 N.J. at 443-44, 896 A.2d 459. The developer argued that the agreement was void for public policy under Briarglen II Condominium Association, Inc. v. Township of Freehold, 330 N.J.Super. 345, 749 A.2d 881 (App.Div.2000), which held that it was inequitable to the property owner for a municipality to delegate its statutory responsibility under N.J.S.A. 40:67-23.3 while simultaneously collecting property taxes. However, the Ramapo Court found that such agreements are valid so long as they terminate as soon as the developer finishes the property and transfers ownership of the road to the association. Id. at 453, 896 A.2d 459.
Relying on Briarglen and Ramapo, Castle Ridge argues that it is similarly inequitable for the Township to require reimbursement for winter maintenance on Lisa Court under the developer's agreement while collecting property taxes on the completed lots. As noted, we have previously rejected this argument. See Evesham, supra, 182 N.J.Super. at 360-61, 440 A.2d 1361. In any event, Briarglen and Ramapo are inapposite because the Township here does not have an independent obligation, either through acceptance of the property or under N.J.S.A. 40:67-23.3, to provide such services.
Nothing in the record indicates that Lisa Court was dedicated to the Township, much less that the Township accepted such dedication if it did occur. On the contrary, the Township engineer has certified that the Township, under its relevant ordinance, would not accept any dedication of Lisa Court until Castle Ridge brought Lisa Court in conformity with the Township's zoning provision. Similarly, Castle Ridge admits that the development on Lisa Court was not subject to N.J.S.A. 40:67-23.3 because it was not a private community within the meaning of that section. Thus, since Castle Ridge continues to own Lisa Court and because the Castle Ridge development is not a private community under N.J.S.A. 40:67-23.3, the Township owes no duty of maintaining this private road. Island Improvement Ass'n, supra, 155 N.J.Super. at 574, 383 A.2d 133.
Affirmed.