**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5236-15T1

ROBERT J. PACILLI HOMES, LLC,

    Plaintiff-Appellant,

v.

TOWNSHIP OF HARRISON, a
Municipal Corporation of the
State of New Jersey, HARRISON
TOWNSHIP JOINT LAND USE BOARD
and REMINGTON & VERNICK,

    Defendants-Respondents.

_____

Submitted September 20, 2017 — Decided November 1, 2017

Before Judges Simonelli and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Gloucester County, Docket No.
L-1378-15.

The D'Elia Law Firm, LLC, attorneys for
appellant (Vincent D'Elia, on the brief).

Mason, Griffin & Pierson, PC, attorneys for
respondent Harrison Township Joint Land Use
Board (Cory K. Kestner, of counsel and on the
brief).

Brian J. Duffield, attorney for respondent
Township of Harrison.

PER CURIAM

This appeal involves the enforcement of a settlement agreement between plaintiff Robert J. Pacilli Homes, LLC, a developer, and defendants Township of Harrison (Township), the Harrison Township Joint Land Use Board (Board), and Remington & Vernick (R&V), concerning a development known as Tesoro Estates I. The Board passed a resolution granting plaintiff preliminary and final major subdivision approvals to construct twenty-one single-family residential units on the property, conditioned, in part, on the installation of six-inch thick reinforced concrete driveway aprons on each lot.

Plaintiff installed asphalt driveway aprons instead of concrete aprons based on an alleged field change approved by the Township's former engineer, J. Michael Fralinger, who died in 2009 without having documented his approval. In 2012, the Township's new engineer, R&V, rejected the asphalt driveway aprons and required plaintiff to remove and replace them with concrete driveway aprons as required by the approvals. Plaintiff responded that the project was already completed, and demanded a release of the performance bond it posted to ensure completion.

To resolve the matter, plaintiff submitted an application to the Board to amend the approvals and subdivision plan to permit asphalt driveway aprons based on Fralinger's approval of the field

change (the proposed change).[1] The Board found it appeared that Fralinger approved the change, but because it was not a minimal or de minimus deviation, it was outside the scope of his authority to approve and plaintiff had to return to the Board for a modification to the requirement for concrete driveway aprons.

The Board considered plaintiff's application and determined that because plaintiff and the president of the Homeowner's Association, Mary Kay Trace, represented that all property owners supported the application and did not want to remove the asphalt driveway aprons, plaintiff's application "may be appropriately granted upon certification and proof that all [property owners] support the application." The Board passed a resolution, granting the application subject to the following condition:

> Within one year of the approvals granted herein, [plaintiff] <u>shall obtain and submit to the Township's Land Use Administrator, the written endorsement of all property owners within the development</u>, on a letter in a form prepared by the Board Attorney, supporting and accepting [plaintiff's] proposed change from the concrete driveway aprons originally approved to the asphalt aprons installed.
>
> [(Emphasis added).]

In other words, plaintiff had to obtain the unanimous consent of the property owners to the proposed change.

---

[1] Plaintiff also sought other changes not pertinent to this appeal.

A-5236-15T1

Plaintiff filed a complaint in lieu of prerogative writs, seeking to exscind the condition and compel the Township to release the performance bond.[2] Judge Georgia M. Curio held a settlement conference on January 21, 2016. In a January 22, 2016 letter, the Board's attorney, Kevin A. Van Hise, advised the judge that "[p]ursuant to yesterday's settlement discussions . . . the Board would be amendable to modifying the condition of approval pertaining to the driveway aprons (requiring a majority sign-off of property owners rather than unanimous consent)[.]" Thus, instead of unanimous consent of the property owners, the Board would approve the proposed change if a majority consented.

Van Hise enclosed a draft of a letter the Board would send to all property owners. The letter notified the property owners of plaintiff's application and the proposed change, and that as a condition of approval, plaintiff had "to submit proof to the Board that <u>a majority of the [property owners]</u> within the development consent to this change by obtaining a countersignature to this letter <u>by each [property owner]</u>." (Emphasis added). The letter instructed the property owners to "indicate [their] consent or objection below, sign where indicated, and return this form to

---

[2] Plaintiff sought other relief not pertinent to this appeal.

[the Board] as soon as possible." Plaintiff's attorney requested a minor change to this letter, which did not affect its substance.

Trace sent a letter to the property owners, urging them to respond to the Board's letter. The letter also advised the property owners that the Board "agreed to abide by the decision of the <u>majority</u> of homeowners, a concession from [the Board's] original position to require a unanimous decision."

In a March 24, 2016 letter, Van Hise advised Judge Curio as follows:

> The proposed settlement was agreeable to co-defendants, and by telephone conversation with [p]laintiff's counsel on February 4, with minor modification to the originally drafted letter, I was advised that the settlement was acceptable to [p]laintiff. As such, on February 9th, the Township served, by [c]ertified [m]ail [r]eturn [r]eceipt [r]equested and [r]egular [m]ail, the agreed upon letter to all property owners in the development as listed on the official property owners report provided by the Tax Assessor's Office.

Van Hise also advised that of the twenty-one property owners, seven consented to the proposed change, five objected, and nine did not vote, and thus, a majority did not consent to the proposed change.

All parties moved to enforce the settlement, and agreed there was a settlement agreement and its terms were contained in Van Hise's January 22, 2016 letter. The parties differed as to the

meaning of the term "majority." Plaintiff argued that under the By-Laws of the Homeowners Association, one-fourth, or six, of the property owners constituted a quorum. Thus, under this construct, it obtained the consent of more than a majority of the property owners because seven consented to the proposed change. Defendants argued that plaintiff did not obtain the consent of a majority of all property owners, and thus, had not satisfied the condition of the settlement.

Judge Curio denied plaintiff's motion and granted defendants' motion. After reviewing the documentary evidence, the judge interpreted the term "majority" to mean that plaintiff was required to obtain the consent of a majority of the twenty-one property owners to the proposed change, not a majority of only those who voted. The judge reasoned as follows:

> The conclusion that this has to be a majority of the [property owners] is contained in the correspondence of Mr. Van Hise . . . to the [c]ourt, which memorialized the terms of the settlement.

> [It is] further corroborated in the language of the [Board's] letter that was prepared for circulation among the [property owners]. Again, [it is] notable that it was submitted to all of the [property owners] and that . . . the language of it, the content of it, was approved by then counsel for the [p]laintiff.

> And also, this notion that it's a majority of the [property owners] versus some

other construct, is corroborated yet again by the language . . . of a letter submitted to all of the [property owners] by [Trace].

And so clearly, the terms of the settlement required the vote of the majority of the [property owners] and that was not accomplished. [I am] not persuaded that the argument that a quorum was achieved has anything to do with this vote.

This was not a vote of the [H]omeowner's [A]ssociation. This was a canvassing of all of the [property owners] and . . . going from the condition requiring unanimity of all [property owners] to a lesser burden of a majority of the [property owners].

I [do not] think that [there is] any conclusion but that, clearly, the majority of the [property owners] was required in order to achieve [p]laintiff's preferred result.

Judge Curio also noted that plaintiff was "not an unsophisticated participant in all of this[,]" and if "he relied on [a] purported field change, he did so at his own risk. . . . [T]here is no authority for a field change of this nature, even if, in fact, there was one made and that the condition imposed [could not] be changed in the fashion urged by [p]laintiff." The judge entered an order on June 22, 2016, denying plaintiff's motion, granting defendants' motion, confirming the settlement, and dismissing the complaint with prejudice. Plaintiff subsequently moved for reconsideration, which the judge denied.

7

Plaintiff then filed a notice of appeal from the June 22, 2016 order.

On appeal, plaintiff contends Judge Curio erred in her interpretation of the term "majority." Plaintiff argues the judge should have interpreted the term "majority" in accordance with the definition of "majority vote" in Robert's Rules of Order, which states that "[o]nly a majority of those actually voting is required." Plaintiff posits that the Board's letter to the property owners did not refer to a majority of the "entire membership" of property owners, and again relies on the quorum argument it raised before the judge.[3]

---

[3] We decline to address plaintiff's alternative argument that the judge should have voided the settlement because there was no meeting of the minds as to the definition of the term "majority." Plaintiff did not raise this issue before Judge Curio on its motion to enforce and it is not jurisdictional in nature and does not substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted). Plaintiff improperly raised this issue for the first time in its motion for reconsideration. However, a party may not use a motion for reconsideration as a basis for presenting facts or arguments that could have been provided in opposition to the original motion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Further, plaintiff only designated the June 22, 2016 order in its notice of appeal, not the order denying its motion for reconsideration. "[I]t is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Pressler and Verniero, Current N.J. Court Rules, comment 6 on R. 2:5-1(f)(1) (2018). We also decline to address plaintiff's contention that the Township was bound by Fralinger's approval of the field change, as the settlement subsumed this issue. An issue settled by the parties

A settlement of a legal claim between parties is a contract like any other contract, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which "may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Pascarella v. Bruck, 190 N.J. Super 118, 124-25 (App. Div.) (citation omitted), certif. denied, 94 N.J. 600 (1983)). "The interpretation and construction of a contract is a matter of law for the trial court, subject to de novo review on appeal." Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016). "[We] give 'no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

Courts should read contracts "as a whole in a fair and common sense manner," and enforce them "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." Id. at 118 (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009); Caruso v. Ravenswood Developers, Inc., 337 N.J. Super.

---

may not be raised on appeal. River Vale v. E. & R Off. Interiors, 241 N.J. Super. 391, 402 (App. Div. 1990).

499, 506 (App. Div. 2001)).  The language of the contract, by itself, must determine the agreement's force and effect if it "is plain and capable of legal construction."  Ibid. (quoting Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 74-75 (App. Div. 2011)).  However, even in an unambiguous contract, the court "may consider 'all of the relevant evidence that will assist in determining [its] intent and meaning.'"  Ibid. (alteration in original) (quoting Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 269 (2006)).

Generally, courts do not supply terms or re-write contracts to afford parties a better bargain than the one negotiated at the time of its formation.  Barr v. Barr, 418 N.J. Super. 18, 31-32 (App. Div. 2011).  "The parties are bound by the contracts they make for themselves, with the understanding that 'a meeting of the minds is an essential element to the valid consummation' of any agreement."  Id. at 32 (quoting Center 48 Ltd. P'ship v. May Dept. Stores Co., 355 N.J. Super. 390, 406 (App. Div. 2002)).

When interpreting and enforcing contracts, courts focus on the parties' intent, the express contract terms, the surrounding circumstances at the time of its formation, and the purpose for which it was entered.  Manahawkin Convalescent, supra, 217 N.J. at 118.  The court's purpose is to give the agreement its plain and rational meaning that aligns with the general purpose of the

contract. Conway, supra, 187 N.J. at 269 (citing Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1953)).

Here, the documents in evidence confirm the parties agreed that a majority of the twenty-one property owners, not a majority of those who voted, had to consent to the proposed change. Van Hise's January 22, 2016 letter specifically states that the condition of approval of the proposed change "require[d] a majority sign-off of property owners[.]" (Emphasis added). The Board's letter to the property owners also specified that plaintiff "was required to submit proof to the Board that a majority of homeowners within the development consent to this change by obtaining a countersignature to this letter by each homeowner. (Emphasis added). As well, Trace's letter to the property owners makes clear that the Board "agreed to abide by the decision of the majority of homeowners." The clear language of these documents expressed the parties' intent that a majority of the property owners had to consent to the proposed change as a condition of the Board's approval of plaintiff's application.

Moreover, no document in evidence contains any reference to the Homeowners Association's By-Laws, the necessity of a quorum, or that a majority will be defined as only a majority of those who actually voted. Thus, based on the plain language of the documents memorializing the settlement agreement, we are satisfied that

Judge Curio correctly interpreted the term "majority" to mean a majority of the twenty-one property owners, not the majority of those who actually voted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5236-15T1