**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5218-15T3

DR. JOSEPH PIACENTILE,

     Plaintiff-Appellant,

v.

GREGORY THORPE,

     Defendant-Respondent,

and

BLAIR HAMRICK, THOMAS GERAHTY,
and MATTHEW BURKE,

     Defendants.

_____

          Argued October 15, 2018 – Decided  October 29, 2018

          Before Judges Messano, Fasciale and Rose.

          On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7866-12.

          Robert A. Magnanini argued the cause for appellant (Stone & Magnanini, LLP, attorneys; David S. Stone, Robert A. Magnanini, Daniel E. Bonilla, and Jason S. Kanterman, on the briefs).

Brian P. McCafferty (Kenney & McCafferty, PC) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Kenney & McCafferty, PC, attorneys; Brian P. McCafferty and Emily C. Lambert, on the brief).

PER CURIAM

Plaintiff Dr. Joseph Piacentile appeals from two June 21, 2016 orders – one order granted defendant Gregory Thorpe's motion for summary judgment, and the other order denied plaintiff's motion for summary judgment. We reverse.

In October 2012, plaintiff filed this complaint against defendant, and Blair Hamrick, Thomas Gerahty, and Matthew Burke (collectively the Relators) alleging claims of fraudulent inducement, breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment. Shortly thereafter, Hamrick, Gerahty, and Burke settled with plaintiff, and plaintiff filed a notice of voluntary dismissal as to the claims against the three individuals.

After much motion practice and the matter being removed to and remanded from federal court, the judge conducted a case management conference. The parties advised the judge that they were confident that the matter could be resolved on motions for summary judgment, submitted joint

stipulated facts, and cross-moved for summary judgment. We briefly summarize the essential undisputed facts in the record before the judge.

In October 2000, plaintiff filed a qui tam complaint in the United States District Court for the Eastern District of Pennsylvania on behalf of the United States Government against numerous pharmaceutical companies, including GlaxoSmithKline (GSK) (the Piacentile matter). Plaintiff's complaint alleged that the companies engaged in kickback schemes with respect to certain drugs. Plaintiff was not an employee of any of the companies, but a former practicing physician who attended numerous conferences involving the drugs in question, where he received materials pertaining to the alleged kickback schemes.

In January 2003, defendant and Hamrick filed a joint qui tam complaint in the United States District Court for the District of Colorado against GSK (the Colorado matter). In April 2003, Gerahty filed a qui tam complaint against GSK in the United States District Court for the District of Massachusetts (the Massachusetts matter), and in February 2004, Gerahty filed a second amended complaint adding Burke as a co-relator, along with additional allegations. The Relators were employees of GSK at some time. The combined Colorado and Massachusetts matters set forth allegations with respect to the off-label promotion and kickback marketing schemes involving GSK drugs. The Relators

3

agreed to share any proceeds from their lawsuits should they prove successful. In 2005, plaintiff retained Boies, Schiller & Flexner, LLP (BSF) to represent him in the Piacentile matter, which was under seal at the time.

On April 2, 2007, the United States Government declined to intervene in plaintiff's case, and the United States District Court for the Eastern District of Pennsylvania ordered the seal be lifted as to GSK. On April 30, 2007, GSK filed a motion to dismiss plaintiff's fifth amended complaint.

While GSK's motion was pending, the Relators and plaintiff discussed the possibility of entering into an agreement. As part of the negotiations, plaintiff requested that the complaints in the Piacentile matter, the Colorado matter, and the Massachusetts matter be exchanged by the parties to evaluate what the allegations were and whether a "first to file" claim could be asserted by plaintiff. The parties entered into an agreement containing strict confidentiality provisions, which permitted plaintiff's counsel, David Stone of BSF, to examine the complaints in a conference room for approximately one hour without taking notes or copying the complaints.

On August 13, 2007, the Relators and plaintiff entered into a settlement agreement and release (the Settlement Agreement or Agreement) to share the proceeds in the event of a recovery in the Massachusetts and Colorado matters.

The Relators agreed to pay plaintiff 2.25% of any Relator's share awarded collectively to the Relators in exchange for plaintiff's dismissal of the Piacentile matter with prejudice. The Agreement included a provision requiring that its terms remain confidential. On August 27, 2007, as per the Settlement Agreement, plaintiff dismissed the Piacentile matter with prejudice.

In March 2009, David Stone left BSF, and opened his own firm, Stone & Magnanini LLP (SM). In April 2009, plaintiff retained SM as his counsel, and accordingly, at all relevant times, Mr. Stone has and continues to represent plaintiff.

In August 2009, representing Michael LaFauci, an employee of GSK with substantial information about GSK's fraudulent practices, SM filed a qui tam complaint on behalf of LaFauci against GSK in the United States District Court for the District of New Jersey. The complaint alleged that GSK engaged in unlawful promotional schemes relating to certain drugs.

On July 2, 2012, the United States Government announced a global settlement with GSK, whereby GSK agreed to pay $3 billion to resolve all outstanding criminal and civil liabilities. GSK agreed to pay over $1 billion to settle the civil qui tam allegations brought by the Relators. Pursuant to the same agreement, GSK agreed to pay approximately $25 million to settle allegations

A-5218-15T3

brought by LaFauci and a GSK sales manager. On July 10, 2012, SM issued a press release (the Press Release) about the LaFauci settlement.

On October 4, 2012, SM sought payment from the Relators of 2.25% of the Relators' shares as provided in the Settlement Agreement with plaintiff. The Relators refused to pay any part of the amounts owed on the grounds that plaintiff breached the Settlement Agreement. And on October 16, 2012, after plaintiff filed this complaint, the Relators' counsel sent plaintiff a joint letter citing SM's press release as the reason for non-payment.

On cross-motions for summary judgment on stipulated facts, the judge concluded that plaintiff had breached the confidentiality term in the settlement agreement by issuing SM's Press Release. The judge then entered the orders under review. Plaintiff argues primarily that the judge rewrote the parties' settlement agreement.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court . . . ." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues

of law.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  The interpretation of contracts is a matter of law and subject to de novo review.  Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).  On motions for summary judgment, we consider the facts in a light most favorable to the non-moving party.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Following well-established rules of construction, we begin our contract interpretation by determining the intent of the parties.  Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979) ("The polestar of construction of a contract is to discover the intention of the parties.").  "In that regard, the court may not re-write a contract or grant a better deal than that for which the parties expressly bargained."  Globe Motor Co. v. Igdalev, 436 N.J. Super. 594, 602 (App. Div. 2014), rev'd on other grounds, 225 N.J. 469 (2016); see also McMahon v. City of Newark, 195 N.J. 526, 545-46 (2008).

An unambiguous contract must be enforced as written.  Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996) (citing U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 393 (App. Div. 1961)).  Thus, when "a contract 'is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'"  Manahawkin Convalescent

v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 74-75 (App. Div. 2011)).

Plaintiff and defendant – along with their respective counsel – freely entered into the Settlement Agreement, which included the confidentiality provision (the Confidentiality Provision) that is at the heart of this appeal.  The Confidentiality Provision of the Agreement states:

> Except as provided below, the parties and their attorneys acknowledge that the above-referenced Colorado and Massachusetts matters are still under seal and that all parties to this Agreement and their attorneys shall abide by the terms of those seals and shall not disclose any information whatsoever about those matters.  The parties and their attorneys also agree to keep the terms of the settlement herein completely confidential, without disclosure to any outside individual or entity whatsoever without a prior order of court of competent jurisdiction on good use shown and with motion with due prior notice thereof to attorneys of record for each party to this Agreement.  The terms of the settlement necessary to accomplish the covenants set forth herein may be disclosed to the Court in the Piacentile matter only if counsel is required to do so by the Court.  In no event shall the names of the Colorado and Massachusetts relators, the existence of their qui tam cases, or substance of their allegations be disclosed to . . . [GSK] or to any third party.  In the event that the ED Pa Court seeks information concerning the existence or substance of this Agreement, Piacentile's counsel shall provide counsel for the Colorado and Massachusetts relators with immediate notice of that Court's request and an opportunity to object to any disclosure to the Court in the Piacentile matter.  No

8

> publicity or public comment shall be made by Piacentile or Piacentile's counsel regarding the Massachusetts or Colorado matters at any time. Piacentile and counsel shall not issue a press release or discuss this matter with any member of the press if and when the Colorado and Massachusetts matters settle or are otherwise resolved. Nor shall Piacentile or his counsel . . . in any way suggest that any recovery in the Colorado or Massachusetts matters was in any way related to the Piacentile matter, or a recovery as to which they contributed. Any comment to the press (either on background or on the record), TAFNET, or any other outlet, whether solicited or unsolicited, shall void this Agreement in its entirety.
>
> Further, this confidentiality provision is a material provision and breach of it is breach of the Agreement.
>
> [(Emphasis added.)]

Plaintiff asserts that the judge erred by finding that "the clear terms of the Settlement Agreement [are] that Piacentile and/or his counsel would not in any way suggest that the government's recovery was contributed to by Piacentile's counsel, Mr. Stone," and "the Press Release constitute[d] comment upon and discussion of the Massachusetts and Colorado [matters]."

Plaintiff first argues that the judge erred by equating Mr. Stone's execution of the Agreement – as plaintiff's counsel – while a partner at BSF, as binding on Mr. Stone in his personal capacity. Because SM did not exist when the parties entered into the Agreement, plaintiff contends the press release that Mr. Stone

9

issued in his capacity as an attorney of SM representing LaFauci could not have violated the Agreement. We are unpersuaded by plaintiff's argument.

Mr. Stone's departure from BSF does not absolve him from compliance with the Agreement, and although he changed law firms, Mr. Stone has continued to represent plaintiff, including when the parties signed the Agreement in 2007, when plaintiff filed the lawsuit against the Relators in 2012, and throughout this litigation. BSF no longer represented plaintiff after Mr. Stone departed, but instead plaintiff retained SM when Mr. Stone formed the firm. Although the Confidentiality Provision does not identify Mr. Stone, it specifies "Piacentile's counsel." Mr. Stone signed the Agreement as "Piacentile's counsel" and maintains that position.

As to plaintiff's second assertion, he argues that the judge misconstrued the plain meaning of the Agreement. The judge found that even though the Press Release made no specific reference to the Massachusetts or Colorado matters, the Press Release still constituted "public comment" on those actions which violated the "clear provisions of the Confidentiality Provision of the Settlement Agreement." We agree with plaintiff that the judge misconstrued the Agreement.

The Press Release's title, "[SM] Represents Key Whistleblower in DOJ's Landmark $3 Billion Settlement with [GSK]," and portions of the Press Release – "[SM] represented one of several whistleblowers" and "filed one of several actions against GSK" – along with identifying LaFauci and his lawsuit against GSK, demonstrate that SM published the Press Release on behalf of LaFauci. The title's use of a singular noun, "whistleblower," and the Press Release's repeated use of "one" denotes the discussion of only one matter – the LaFauci matter.

Defendant points out that the Press Release states, "[SM] today announced a three billion dollar settlement of false marketing and fraud claims alongside the U.S. Department of Justice against [GSK], which is the largest settlement of a pharmaceutical False Claims Act [(FCA)] case in U.S. history." And the Press release further explains that SM "worked with other private FCA and government lawyers . . . to conclude the largest settlement of a pharmaceutical [FCA] case ever." The Press Release also individually identifies and quotes Mr. Stone.

Nonetheless, we are unconvinced by defendant's contention that the Press Release's use of the $3 billion amount was comment on the Massachusetts and Colorado matters. Although over $1 billion of the settlement proceeds pertained

11

directly to those matters, the Press Release did not indicate the limitation of LaFauci's recovery. Although LaFauci's recovery was less than the Relators', relying on the $3 billion figure to suggest that SM made a public comment about the Massachusetts and Colorado matters is far-fetched.

By signing the Agreement with the Confidentiality Provision, Mr. Stone agreed not to make a public comment "regarding the Massachusetts and Colorado matters at any time," and "not to issue a press release or discuss this matter with any member of the press." The Confidentiality Provision did not say that Mr. Stone may not discuss the global GSK settlement. The press release, which is certainly a public comment, includes general statements about the GSK settlement and specific comments about LaFauci's matter, but it makes no specific references to the Massachusetts and Colorado matters.

The terms of the Agreement were clear. The judge improperly expanded the Confidentiality Provision. By doing so, he rewrote the Agreement and erroneously found that plaintiff breached the Agreement.[1]

---

[1] For the reasons explained by the judge, we do not address defendant's assertion that plaintiff breached the Agreement by taking credit for the GSK settlement on his website, www.whistleblowersagainstfraud.com. Specifically the judge stated, "[d]efendant's October 16, 2012 letter declaring [p]laintiff to be in default of the Settlement Agreement did not and could not raise such issue since [p]laintiff's website posting did not occur until after [d]efendant withheld payment to [p]laintiff pursuant to the Settlement Agreement."

12

We reject plaintiff's remaining argument that the judge considered inadmissible evidence, and conclude that this contention is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). In light of our holding, we do not address the theory of unjust enrichment raised by plaintiff.

We therefore reverse both orders. Consistent with this opinion, we conclude that plaintiff is entitled to summary judgment as a matter of law on his breach of contract claim. We remand for the entry of the appropriate order. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5218-15T3