**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0608-24

VINELAND CHESTNUT
AVENUE, LLC,

     Plaintiff-Appellant,

v.

FULTON BANK, N.A.,

     Defendant-Respondent.

_____

          Submitted November 5, 2025 – Decided January 30, 2026

          Before Judges Sumners and Susswein.

          On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0423-22.

          The Milun Law Firm, LLC, attorneys for appellant (Ryan Milun, of counsel; Susan Ferreira, on the briefs).

          Archer & Greiner, PC, attorneys for respondent (Jerrold S. Kulback, on the brief).

PER CURIAM

Vineland Chestnut Avenue, LLC contracted with Family Dollar Stores of New Jersey, LLC to construct a store and lease it to Family Dollar as a tenant. Vineland Chestnut entered into a construction loan agreement with Fulton Bank, N.A. to finance the construction.

Vineland Chestnut contracted with Whirlwind Steel to prefabricate the store's steel structure off-site and deliver it to the construction site with cash on delivery (COD). About two weeks before the steel structure was to be delivered on January 2, 2020, Vineland Chestnut requested Fulton Bank to release loan proceeds to pay Whirlwind Steel $97,952 to secure the delivery.[1] Through the loan agreement underwriting process, Fulton Bank knew Vineland Chestnut was contractually obligated to pay Whirlwind Steel upon delivery.

The next day, Fulton Bank declined to release funding, claiming it neither inspected nor approved the "work-in-place" as required by the loan agreement, a precondition to release funds. The bank maintained that per the agreement, "a prefab building was not considered work in place[,] and that the process includes arranging an inspection with an outside inspector and advances are not made based on a site meeting but rather an inspection report completed and provided to the bank with sufficient time to review and approve." Because Whirlwind

---

[1] Vineland Chestnut requested a total advance of $246,596.90.

Steel refused to deliver the steel structure without payment, construction delays ensued, unpaid contractors filed construction liens, and Vineland Chestnut defaulted on the Fulton Bank loan and had to obtain financing with another lender to complete the project.

Vineland Chestnut later sued Fulton Bank, alleging: (1) breach of contract for failing to disburse the loan advance to pay Whirlwind Steel, (2) breach of the implied covenant of good faith and fair dealing, and (3) tortious interference with contractual relations. After discovery and the voluntary dismissal of the tortious interference claim, the motion judge granted Fulton Bank's motion for summary judgment, dismissing the lawsuit for reasons explained in his oral decision. The judge determined Fulton Bank did not breach the loan agreement because under the clear terms of the agreement the bank was not obligated to release funds to pay Whirlwind Steel upon delivery of the steel structure without the bank's prior inspection and approval of the structure in place. The judge also determined there was no evidence of bad faith by Fulton Bank to find that it breached the loan agreement's implied covenant of good faith and fair dealing.

We conclude summary judgment dismissal was correctly granted to Fulton Bank. We do so applying the same standard as the trial court; examining the record evidence in the light most favorable to Vineland Chestnut—the opponent

3

A-0608-24

of the summary judgment motion, <u>Townsend v. Pierre</u>, 221 N.J. 36, 59 (2015) —and finding there was no genuine issue of material fact in dispute, <u>see</u> <u>R.</u>4:46-2(c).

Vineland Chestnut argues that the contract terms were ambiguous and created a genuine issue of material fact as evidenced by Fulton Bank's: (1) knowledge of "Whirlwind Steel's off-site work and COD terms prior to closing the loan"; and (2) failure to "raise [the COD requirement] as an issue" before providing the loan. Vineland Chestnut maintains a factfinder at trial must decide "whether Fulton [Bank]'s actions were consistent with its contractual obligations and with the 'obvious, dominant or principal purpose of the contract,'" as set forth in the <u>Model Jury Charges (Civil)</u>, 4.10H(2), "Interpretation of Contract Terms" (approved May 1998). Vineland Chestnut further argues that the loan agreement "inherently require[d] flexibility" to satisfy Whirlwind Steel's COD requirement and that the motion judge "erred in isolating the 'work in place' provision of the agreement without considering the broader context and purpose of the loan." There is no merit to these arguments.

The loan agreement's term for release of payment to pay for construction costs are "'clear and unambiguous, there is no room for construction and the court must enforce those terms as written,' <u>Watson v. City of East Orange</u>, 175

A-0608-24

N.J. 442, 447 (2003), giving them 'their plain, ordinary meaning.'" Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Pizzullo v. New Jersey Mfrs. Ins. Co., 196 N.J. 251, 270 (2008)). If a contract can be construed according to its plain language, then that language governs. Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 74-75 (App. Div. 2011).

The agreement's Section 2(h) clearly provides:

> All Advances shall be made only for work-in-place as found to be satisfactory by Lender's construction inspector . . . , whose inspections in no case shall be construed as an acceptance by Lender of quality of work and shall be deemed performed for Lender's sole benefit and not of Borrower or any other party . . . .

The agreement further provides in Section 11(f) that the "Lender's sole function is that of lender and the only consideration passing from Lender to Borrower are the proceeds of the Loans in accordance with and subject to the terms of this Agreement."

In its breach of contract claim, Vineland Chestnut does not argue that the term "work-in-place" is ambiguous and should be interpreted to include the prefabricated steel structure planned for delivery. Moreover, in contending that Fulton Bank breached the implied covenant of good faith and fair dealing, Vineland Chestnut acknowledges that "Fulton [Bank]'s refusal to release funds was not an issue of contractual ambiguity." Thus, it is inconsistent for Vineland

5

Chestnut to argue in its breach of contract claim that the agreement is ambiguous or contains a disputed term. Regardless, the breach of contract claim fails on its face.

Although the loan agreement does not define "work-in-place," it defines "work" as "all of the work of the [c]ontractor in pursuit of completing the [p]roject." "Work-in-place," must therefore mean something narrower. While prefabricated structures made "in pursuit of completing the project" clearly fit under the loan agreement's definition of "work," Section 2(h) of the agreement requires such work to be "in-place" and "found to be satisfactory by [l]ender's construction inspector." Consequently, "in-place," cannot logically be interpreted to include a prefabricated steel structure made off-site considering Fulton Bank's inspection and approval before loan funds can be used for payment.

Given the lack of ambiguity, we need not delve into the purpose of the provision because there is nothing in the agreement suggesting that the provision's plain meaning should be interpreted in any other way. See Newark Publishers' Ass'n v. Newark Typographical Union, No. 103, 22 N.J. 419, 427 (1956) ("Evidence of the circumstances [regarding a contractual clause] is always admissible in aid of the interpretation of an integrated agreement . . ."

A-0608-24

but courts "are not at liberty to introduce and effectuate some supposed unrevealed intention.  The actual intent of the parties is ineffective unless made known in some way in the writing").

Because Whirlwind Steel's prefabricated steel structure was not installed, inspected, and approved prior to Vineland Chestnut's loan advance request, Fulton Bank exercised its rights under the agreement to decline the request.  Accordingly, the motion judge was correct in summarily dismissing Fulton Bank's breach of contract claim.

Turning to Vineland Chestnut's implied covenant of good faith and fair dealing claim, it argues Fulton Bank was aware of "Whirlwind Steel's COD payment requirement . . . . [and] Fulton[] [Bank] deci[ded] to close the loan with full knowledge . . . demonstrat[ing] that Fulton [Bank] implicitly agreed to fund the project in a manner consistent with the contractual obligations between [it] and its contractors."  Since this argument mirrors the breach of contract claim, we must reject it for the same reason.

An implied covenant of good faith and fair dealing claim signifies that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997) (quoting Palisades Props.,

A-0608-24

Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). There is nothing in the summary judgment record that Fulton Bank "arbitrarily, unreasonably, or capriciously" and with an "improper motive" breached an implied covenant with Vineland Chestnut by declining the loan advance. Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001).

We reiterate that Fulton Bank appropriately exercised the agreement's Section 2(h), requiring inspection of work-in-place prior to disbursement of loan funds, to protect its interest. Fulton Bank acted "[w]ithout bad motive or intention, [and its] discretionary decision[] that happen[ed] to result in economic disadvantage to [Vineland Chestnut] are of no legal significance." Ibid. Vineland Chestnut has not shown Fulton Bank acted unreasonably or arbitrarily. As such, the motion judge correctly dismissed Vineland Chestnut's implied covenant of good faith and fair dealing claim.

To the extent we have not addressed any remaining issues, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0608-24